## FIRESTONE TIRE & RUBBER CO. ET AL. *v.* BRUCH ET AL.

No. 87–1054.   Argued November 30, 1988—Decided February 21, 1989

O'CONNOR, J., delivered the opinion for a unanimous Court with respect to Parts I and II, and the opinion of the Court with respect to Part III, in which REHNQUIST, C. J., and BRENNAN, WHITE, MARSHALL, BLACKMUN, STEVENS, and KENNEDY, JJ., joined. SCALIA, J., filed an opinion concurring in part and concurring in the judgment, *post*, p. 119.

*Martin Wald* argued the cause for petitioners. With him on the briefs were *James D. Crawford, Deena Jo Schneider, Steve D. Shadowen,* and *Thomas M. Forman.*

*David M. Silberman* argued the cause for respondents. With him on the brief were *Laurence Gold, Paula R. Markowitz,* and *Bruce R. Lerner.*

*Christopher J. Wright* argued the cause for the United States as *amicus curiae* urging affirmance. With him on the brief were *Solicitor General Fried, Deputy Solicitor General Ayer, George R. Salem, Charles I. Hadden,* and *Jeffrey A. Hennemuth.* *

JUSTICE O'CONNOR delivered the opinion of the Court.

This case presents two questions concerning the Employee Retirement Income Security Act of 1974 (ERISA), 88 Stat.

---

*Briefs of *amici curiae* urging reversal were filed for the American Council of Life Insurance et al. by *Phillip E. Stano, Jack H. Blaine,* and *David J. Larkin, Jr.;* for the Chamber of Commerce of the United States et al. by *Rex E. Lee, Carter G. Phillips, Mark D. Hopson, Stephen A. Bokat, Robin S. Conrad, Jan S. Amundson,* and *Quentin Riegel;* for the ERISA Industry Committee by *John M. Vine, Harris Weinstein,* and *Elliott Schulder;* and for the Travelers Insurance Co. by *Carol H. Jewett.*

Briefs of *amici curiae* urging affirmance were filed for the Plaintiff Employment Lawyers Association by *Paul H. Tobias;* and for the Pension Rights Center by *Karen W. Ferguson* and *Terisa E. Chaw.*

*Christopher G. Mackaronis* and *Cathy Ventrell-Monsees* filed a brief for the American Association of Retired Persons as *amicus curiae.*

829, as amended, 29 U. S. C. § 1001 *et seq.* First, we address the appropriate standard of judicial review of benefit determinations by fiduciaries or plan administrators under ERISA. Second, we determine which persons are "participants" entitled to obtain information about benefit plans covered by ERISA.

I

Late in 1980, petitioner Firestone Tire and Rubber Company (Firestone) sold, as going concerns, the five plants composing its Plastics Division to Occidental Petroleum Company (Occidental). Most of the approximately 500 salaried employees at the five plants were rehired by Occidental and continued in their same positions without interruption and at the same rates of pay. At the time of the sale, Firestone maintained three pension and welfare benefit plans for its employees: a termination pay plan, a retirement plan, and a stock purchase plan. Firestone was the sole source of funding for the plans and had not established separate trust funds out of which to pay the benefits from the plans. All three of the plans were either "employee welfare benefit plans" or "employee pension benefit plans" governed (albeit in different ways) by ERISA. By operation of law, Firestone itself was the administrator, 29 U. S. C. § 1002(16)(A)(ii), and fiduciary, § 1002(21)(A), of each of these "unfunded" plans. At the time of the sale of its Plastics Division, Firestone was not aware that the termination pay plan was governed by ERISA, and therefore had not set up a claims procedure, § 1133, nor complied with ERISA's reporting and disclosure obligations, §§ 1021–1031, with respect to that plan.

Respondents, six Firestone employees who were rehired by Occidental, sought severance benefits from Firestone under the termination pay plan. In relevant part, that plan provides as follows:

> "If your service is discontinued prior to the time you are eligible for pension benefits, you will be given termination pay if released because of a reduction in work

force or if you become physically or mentally unable to perform your job.

"The amount of termination pay you will receive will depend on your period of credited company service."

Several of the respondents also sought information from Firestone regarding their benefits under all three of the plans pursuant to certain ERISA disclosure provisions. See §§ 1024(b)(4), 1025(a). Firestone denied respondents severance benefits on the ground that the sale of the Plastics Division to Occidental did not constitute a "reduction in work force" within the meaning of the termination pay plan. In addition, Firestone denied the requests for information concerning benefits under the three plans. Firestone concluded that respondents were not entitled to the information because they were no longer "participants" in the plans.

Respondents then filed a class action on behalf of "former, salaried, non-union employees who worked in the five plants that comprised the Plastics Division of Firestone." Complaint ¶ 9, App. 94. The action was based on § 1132(a)(1), which provides that a "civil action may be brought . . . by a participant or beneficiary [of a covered plan] . . . (A) for the relief provided for in [§ 1132(c)], [and] (B) to recover benefits due to him under the terms of his plan." In Count I of their complaint, respondents alleged that they were entitled to severance benefits because Firestone's sale of the Plastics Division to Occidental constituted a "reduction in work force" within the meaning of the termination pay plan. Complaint ¶¶ 23–44, App. 98–104. In Count VII, respondents alleged that they were entitled to damages under § 1132 (c) because Firestone had breached its reporting obligations under § 1025(a). Complaint ¶¶ 87–94, App. 104–106.

The District Court granted Firestone's motion for summary judgment. 640 F. Supp. 519 (ED Pa. 1986). With respect to Count I, the District Court held that Firestone had satisfied its fiduciary duty under ERISA because its decision not to pay severance benefits to respondents under the ter-

mination pay plan was not arbitrary or capricious. *Id.*, at 521–526. With respect to Count VII, the District Court held that, although § 1024(b)(4) imposes a duty on a plan administrator to respond to written requests for information about the plan, that duty extends only to requests by plan participants and beneficiaries. Under ERISA a plan participant is "any employee or former employee . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan." § 1002(7). A beneficiary is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." § 1002(8). The District Court concluded that respondents were not entitled to damages under § 1132(c) because they were not plan "participants" or "beneficiaries" at the time they requested information from Firestone. 640 F. Supp., at 534.

The Court of Appeals reversed the District Court's grant of summary judgment on Counts I and VII. 828 F. 2d 134 (CA3 1987). With respect to Count I, the Court of Appeals acknowledged that most federal courts have reviewed the denial of benefits by ERISA fiduciaries and administrators under the arbitrary and capricious standard. *Id.*, at 138 (citing cases). It noted, however, that the arbitrary and capricious standard had been softened in cases where fiduciaries and administrators had some bias or adverse interest. *Id.*, at 138–140. See, *e. g., Jung* v. *FMC Corp.*, 755 F. 2d 708, 711–712 (CA9 1985) (where "the employer's denial of benefits to a class avoids a very considerable outlay [by the employer], the reviewing court should consider that fact in applying the arbitrary and capricious standard of review," and "[l]ess deference should be given to the trustee's decision"). The Court of Appeals held that where an employer is itself the fiduciary and administrator of an unfunded benefit plan, its decision to deny benefits should be subject to *de novo* judicial review. It reasoned that in such situations deference is unwarranted given the lack of assurance of impartiality on

the part of the employer. 828 F. 2d, at 137–145. With respect to Count VII, the Court of Appeals held that the right to request and receive information about an employee benefit plan "most sensibly extend[s] both to people who are in fact entitled to a benefit under the plan and to those who claim to be but in fact are not." *Id.*, at 153. Because the District Court had applied different legal standards in granting summary judgment in favor of Firestone on Counts I and VII, the Court of Appeals remanded the case for further proceedings consistent with its opinion.

We granted certiorari, 485 U. S. 986 (1988), to resolve the conflicts among the Courts of Appeals as to the appropriate standard of review in actions under § 1132(a)(1)(B) and the interpretation of the term "participant" in § 1002(7). We now affirm in part, reverse in part, and remand the case for further proceedings.

## II

ERISA provides "a panoply of remedial devices" for participants and beneficiaries of benefit plans. *Massachusetts Mutual Life Ins. Co.* v. *Russell*, 473 U. S. 134, 146 (1985). Respondents' action asserting that they were entitled to benefits because the sale of Firestone's Plastics Division constituted a "reduction in work force" within the meaning of the termination pay plan was based on the authority of § 1132(a)(1)(B). That provision allows a suit to recover benefits due under the plan, to enforce rights under the terms of the plan, and to obtain a declaratory judgment of future entitlement to benefits under the provisions of the plan contract. The discussion which follows is limited to the appropriate standard of review in § 1132(a)(1)(B) actions challenging denials of benefits based on plan interpretations. We express no view as to the appropriate standard of review for actions under other remedial provisions of ERISA.

## A

Although it is a "comprehensive and reticulated statute," *Nachman Corp.* v. *Pension Benefit Guaranty Corp.*, 446

U. S. 359, 361 (1980), ERISA does not set out the appropriate standard of review for actions under § 1132(a)(1)(B) challenging benefit eligibility determinations. To fill this gap, federal courts have adopted the arbitrary and capricious standard developed under 61 Stat. 157, 29 U. S. C. § 186(c), a provision of the Labor Management Relations Act, 1947 (LMRA). See, *e. g.*, *Struble* v. *New Jersey Brewery Employees' Welfare Trust Fund*, 732 F. 2d 325, 333 (CA3 1984); *Bayles* v. *Central States, Southeast and Southwest Areas Pension Fund*, 602 F. 2d 97, 99–100, and n. 3 (CA5 1979). In light of Congress' general intent to incorporate much of LMRA fiduciary law into ERISA, see *NLRB* v. *Amax Coal Co.*, 453 U. S. 322, 332 (1981), and because ERISA, like the LMRA, imposes a duty of loyalty on fiduciaries and plan administrators, Firestone argues that the LMRA arbitrary and capricious standard should apply to ERISA actions. See Brief for Petitioners 13–14. A comparison of the LMRA and ERISA, however, shows that the *wholesale* importation of the arbitrary and capricious standard into ERISA is unwarranted.

In relevant part, 29 U. S. C. § 186(c) authorizes unions and employers to set up pension plans jointly and provides that contributions to such plans be made "for the sole and exclusive benefit of the employees . . . and their families and dependents." The LMRA does not provide for judicial review of the decisions of LMRA trustees. Federal courts adopted the arbitrary and capricious standard both as a standard of review and, more importantly, as a means of asserting jurisdiction over suits under § 186(c) by beneficiaries of LMRA plans who were denied benefits by trustees. See *Van Boxel* v. *Journal Co. Employees' Pension Trust*, 836 F. 2d 1048, 1052 (CA7 1987) ("[W]hen a plan provision as interpreted had the effect of denying an application for benefits unreasonably, or as it came to be said, arbitrarily and capriciously, courts would hold that the plan as 'structured' was not for the sole and exclusive benefit of the employees, so that the denial of

benefits violated [§ 186(c)]).'' See also Comment, The Arbitrary and Capricious Standard Under ERISA: Its Origins and Application, 23 Duquesne L. Rev. 1033, 1037–1039 (1985). Unlike the LMRA, ERISA explicitly authorizes suits against fiduciaries and plan administrators to remedy statutory violations, including breaches of fiduciary duty and lack of compliance with benefit plans. See 29 U. S. C. §§ 1132(a), 1132(f). See generally *Pilot Life Ins. Co.* v. *Dedeaux,* 481 U. S. 41, 52–57 (1987) (describing scope of § 1132(a)). Thus, the *raison d'être* for the LMRA arbitrary and capricious standard—the need for a jurisdictional basis in suits against trustees—is not present in ERISA. See Note, Judicial Review of Fiduciary Claim Denials Under ERISA: An Alternative to the Arbitrary and Capricious Test, 71 Cornell L. Rev. 986, 994, n. 40 (1986). Without this jurisdictional analogy, LMRA principles offer no support for the adoption of the arbitrary and capricious standard insofar as § 1132(a)(1)(B) is concerned.

### B

ERISA abounds with the language and terminology of trust law. See, *e. g.,* 29 U. S. C. §§ 1002(7) (''participant''), 1002(8) (''beneficiary''), 1002(21)(A) (''fiduciary''), 1103(a) (''trustee''), 1104 (''fiduciary duties''). ERISA's legislative history confirms that the Act's fiduciary responsibility provisions, 29 U. S. C. §§ 1101–1114, ''codif[y] and mak[e] applicable to [ERISA] fiduciaries certain principles developed in the evolution of the law of trusts.'' H. R. Rep. No. 93–533, p. 11 (1973). Given this language and history, we have held that courts are to develop a ''federal common law of rights and obligations under ERISA-regulated plans.'' *Pilot Life Ins. Co.* v. *Dedeaux, supra,* at 56. See also *Franchise Tax Board* v. *Construction Laborers Vacation Trust,* 463 U. S. 1, 24, n. 26 (1983) ('' '[A] body of Federal substantive law will be developed by the courts to deal with issues involving rights and obligations under private welfare and pension plans' '') (quoting 129 Cong. Rec. 29942 (1974) (remarks of Sen. Ja-

vits)). In determining the appropriate standard of review for actions under § 1132(a)(1)(B), we are guided by principles of trust law. *Central States, Southeast and Southwest Areas Pension Fund* v. *Central Transport, Inc.*, 472 U. S. 559, 570 (1985).

Trust principles make a deferential standard of review appropriate when a trustee exercises discretionary powers. See Restatement (Second) of Trusts § 187 (1959) ("Where discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control by the court except to prevent an abuse by the trustee of his discretion"). See also G. Bogert & G. Bogert, Law of Trusts and Trustees § 560, pp. 193–208 (2d rev. ed. 1980). A trustee may be given power to construe disputed or doubtful terms, and in such circumstances the trustee's interpretation will not be disturbed if reasonable. *Id.*, § 559, at 169–171. Whether "the exercise of a power is permissive or mandatory depends upon the terms of the trust." 3 W. Fratcher, Scott on Trusts § 187, p. 14 (4th ed. 1988). Hence, over a century ago we remarked that "[w]hen trustees are in existence, and capable of acting, a court of equity will not interfere to control them in the exercise of a *discretion vested in them by the instrument* under which they act." *Nichols* v. *Eaton*, 91 U. S. 716, 724–725 (1875) (emphasis added). See also *Central States, Southeast and Southwest Areas Pension Fund* v. *Central Transport, Inc.*, *supra*, at 568 ("The trustees' determination that the trust documents authorize their access to records here in dispute has significant weight, for the trust agreement explicitly provides that 'any construction [of the agreement's provisions] adopted by the Trustees in good faith shall be binding upon the Union, Employees, and Employers'"). Firestone can seek no shelter in these principles of trust law, however, for there is no evidence that under Firestone's termination pay plan the administrator has the power to construe uncertain terms or that eligibility determinations are to be given deference. See Brief for Respond-

ents 24–25; Reply Brief for Petitioners 7, n. 2; Brief for United States as *Amicus Curiae* 14–15, n. 11.

Finding no support in the language of its termination pay plan for the arbitrary and capricious standard, Firestone argues that as a matter of trust law the interpretation of the terms of a plan is an inherently discretionary function. But other settled principles of trust law, which point to *de novo* review of benefit eligibility determinations based on plan interpretations, belie this contention. As they do with contractual provisions, courts construe terms in trust agreements without deferring to either party's interpretation. "The extent of the duties and powers of a trustee is determined by the rules of law that are applicable to the situation, and not the rules that the trustee or his attorney believes to be applicable, and by the terms of the trust *as the court may interpret them,* and not as they may be interpreted by the trustee himself or by his attorney." 3 W. Fratcher, Scott on Trusts § 201, at 221 (emphasis added). A trustee who is in doubt as to the interpretation of the instrument can protect himself by obtaining instructions from the court. Bogert & Bogert, *supra,* § 559, at 162–168; Restatement (Second) of Trusts § 201, Comment *b* (1959). See also *United States* v. *Mason,* 412 U. S. 391, 399 (1973). The terms of trusts created by written instruments are "determined by the provisions of the instrument as interpreted in light of all the circumstances and such other evidence of the intention of the settlor with respect to the trust as is not inadmissible." Restatement (Second) of Trusts § 4, Comment *d* (1959).

The trust law *de novo* standard of review is consistent with the judicial interpretation of employee benefit plans prior to the enactment of ERISA. Actions challenging an employer's denial of benefits before the enactment of ERISA were governed by principles of contract law. If the plan did not give the employer or administrator discretionary or final authority to construe uncertain terms, the court reviewed the employee's claim as it would have any other contract claim—

by looking to the terms of the plan and other manifestations of the parties' intent. See, e. g., *Conner* v. *Phoenix Steel Corp.*, 249 A. 2d 866 (Del. 1969); *Atlantic Steel Co.* v. *Kitchens*, 228 Ga. 708, 187 S. E. 2d 824 (1972); *Sigman* v. *Rudolph Wurlitzer Co.*, 57 Ohio App. 4, 11 N. E. 2d 878 (1937).

Despite these principles of trust law pointing to a *de novo* standard of review for claims like respondents', Firestone would have us read ERISA to require the application of the arbitrary and capricious standard to such claims. ERISA defines a fiduciary as one who "exercises any discretionary authority or discretionary control respecting management of [a] plan or exercises any authority or control respecting management or disposition of its assets." 29 U. S. C. § 1002(21)(A)(i). A fiduciary has "authority to control and manage the operation and administration of the plan," § 1102(a)(1), and must provide a "full and fair review" of claim denials, § 1133(2). From these provisions, Firestone concludes that an ERISA plan administrator, fiduciary, or trustee is empowered to exercise *all* his authority in a discretionary manner subject only to review for arbitrariness and capriciousness. But the provisions relied upon so heavily by Firestone do not characterize a fiduciary as one who exercises *entirely* discretionary authority or control. Rather, one is a fiduciary to the extent he exercises *any* discretionary authority or control. Cf. *United Mine Workers of America Health and Retirement Funds* v. *Robinson*, 455 U. S. 562, 573–574 (1982) (common law of trusts did not alter nondiscretionary obligation of trustees to enforce eligibility requirements as required by LMRA trust agreement).

ERISA was enacted "to promote the interests of employees and their beneficiaries in employee benefit plans," *Shaw* v. *Delta Airlines, Inc.*, 463 U. S. 85, 90 (1983), and "to protect contractually defined benefits," *Massachusetts Mutual Life Ins. Co.* v. *Russell*, 473 U. S., at 148. See generally 29 U. S. C. § 1001 (setting forth congressional findings and declarations of policy regarding ERISA). Adopting Firestone's

reading of ERISA would require us to impose a standard of review that would afford less protection to employees and their beneficiaries than they enjoyed before ERISA was enacted. Nevertheless, Firestone maintains that congressional action after the passage of ERISA indicates that Congress intended ERISA claims to be reviewed under the arbitrary and capricious standard. At a time when most federal courts had adopted the arbitrary and capricious standard of review, a bill was introduced in Congress to amend § 1132 by providing *de novo* review of decisions denying benefits. See H. R. 6226, 97th Cong., 2d Sess. (1982), reprinted in Pension Legislation: Hearings on H. R. 1614 et al. before the Subcommittee on Labor-Management Relations of the House Committee on Education and Labor, 97th Cong., 2d Sess., 60 (1983). Because the bill was never enacted, Firestone asserts that we should conclude that Congress was satisfied with the arbitrary and capricious standard. See Brief for Petitioners 19–20. We do not think that this bit of legislative inaction carries the day for Firestone. Though "instructive," failure to act on the proposed bill is not conclusive of Congress' views on the appropriate standard of review. *Bowsher* v. *Merck & Co.*, 460 U. S. 824, 837, n. 12 (1983). The bill's demise may have been the result of events that had nothing to do with Congress' view on the propriety of *de novo* review. Without more, we cannot ascribe to Congress any acquiescence in the arbitrary and capricious standard. "[T]he views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one." *United States* v. *Price*, 361 U. S. 304, 313 (1960).

Firestone and its *amici* also assert that a *de novo* standard would contravene the spirit of ERISA because it would impose much higher administrative and litigation costs and therefore discourage employers from creating benefit plans. See, *e. g.*, Brief for American Council of Life Insurance et al. as *Amici Curiae* 10–11. Because even under the arbitrary and capricious standard an employer's denial of benefits could

be subject to judicial review, the assumption seems to be that a *de novo* standard would encourage more litigation by employees, participants, and beneficiaries who wish to assert their right to benefits. Neither general principles of trust law nor a concern for impartial decisionmaking, however, forecloses parties from agreeing upon a narrower standard of review. Moreover, as to both funded and unfunded plans, the threat of increased litigation is not sufficient to outweigh the reasons for a *de novo* standard that we have already explained.

As this case aptly demonstrates, the validity of a claim to benefits under an ERISA plan is likely to turn on the interpretation of terms in the plan at issue. Consistent with established principles of trust law, we hold that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. Because we do not rest our decision on the concern for impartiality that guided the Court of Appeals, see 828 F. 2d, at 143–146, we need not distinguish between types of plans or focus on the motivations of plan administrators and fiduciaries. Thus, for purposes of actions under § 1132(a)(1)(B), the *de novo* standard of review applies regardless of whether the plan at issue is funded or unfunded and regardless of whether the administrator or fiduciary is operating under a possible or actual conflict of interest. Of course, if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a "facto[r] in determining whether there is an abuse of discretion." Restatement (Second) of Trusts § 187, Comment *d* (1959).

### III

Respondents unsuccessfully sought plan information from Firestone pursuant to 29 U. S. C. § 1024(b)(4), one of

ERISA's disclosure provisions. That provision reads as follows:

> "The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated. The administrator may make a reasonable charge to cover the cost of furnishing such complete copies. The Secretary [of Labor] may by regulation prescribe the maximum amount which will constitute a reasonable charge under the preceding sentence."

When Firestone did not comply with their request for information, respondents sought damages under 29 U. S. C. § 1132 (c)(1)(B) (1982 ed., Supp. IV), which provides that "[a]ny administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day."

Respondents have not alleged that they are "beneficiaries" as defined in § 1002(8). See Complaint ¶¶ 87–95, App. 104–106. The dispute in this case therefore centers on the definition of the term "participant," which is found in § 1002(7):

> "The term 'participant' means any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit."

The Court of Appeals noted that § 1132(a)(1) allows suits for benefits "by a participant or beneficiary." Finding that it would be illogical to say that a person could only bring a claim for benefits if he or she was entitled to benefits, the Court of

Appeals reasoned that § 1132(a)(1) should be read to mean that "'a civil action may be brought by *someone who claims to be* a participant or beneficiary.'" 828 F. 2d, at 152. It went on to conclude that the same interpretation should apply with respect to § 1024(b)(4): "A provision such as that one, entitling people to information on the extent of their benefits, would most sensibly extend both to people who are in fact entitled to a benefit under the plan and to those who claim to be but in fact are not." *Id.*, at 153.

The Court of Appeals "concede[d] that it is expensive and inefficient to provide people with information about benefits—and to permit them to obtain damages if information is withheld—if they are clearly not entitled to the benefits about which they are informed." *Ibid.* It tried to solve this dilemma by suggesting that courts use discretion and not award damages if the employee's claim for benefits was not colorable or if the employer did not act in bad faith. There is, however, a more fundamental problem with the Court of Appeals' interpretation of the term "participant": it strays far from the statutory language. Congress did not say that all "claimants" could receive information about benefit plans. To say that a "participant" is any person who claims to be one begs the question of who is a "participant" and renders the definition set forth in § 1002(7) superfluous. Indeed, respondents admitted at oral argument that "the words point against [them]." Tr. of Oral Arg. 40.

In our view, the term "participant" is naturally read to mean either "employees in, or reasonably expected to be in, currently covered employment," *Saladino* v. *I. L. G. W. U. National Retirement Fund*, 754 F. 2d 473, 476 (CA2 1985), or former employees who "have . . . a reasonable expectation of returning to covered employment" or who have "a colorable claim" to vested benefits, *Kuntz* v. *Reese*, 785 F. 2d 1410, 1411 (CA9) *(per curiam)*, cert. denied, 479 U. S. 916 (1986). In order to establish that he or she "may become eligible" for benefits, a claimant must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility re-

quirements will be fulfilled in the future. "This view attributes conventional meanings to the statutory language since all employees in covered employment and former employees with a colorable claim to vested benefits 'may become eligible.' A former employee who has neither a reasonable expectation of returning to covered employment nor a colorable claim to vested benefits, however, simply does not fit within the [phrase] 'may become eligible.'" *Saladino* v. *I. L. G. W. U. National Retirement Fund, supra,* at 476.

We do not think Congress' purpose in enacting the ERISA disclosure provisions—ensuring that "the individual participant knows exactly where he stands with respect to the plan," H. R. Rep. No. 93–533, p. 11 (1973)—will be thwarted by a natural reading of the term "participant." Faced with the possibility of $100 a day in penalties under § 1132(c)(1)(B), a rational plan administrator or fiduciary would likely opt to provide a claimant with the information requested if there is any doubt as to whether the claimant is a "participant," especially when the reasonable costs of producing the information can be recovered. See 29 CFR § 2520.104b–30(b) (1987) (the "charge assessed by the plan administrator to cover the costs of furnishing documents is reasonable if it is equal to the actual cost per page to the plan for the least expensive means of acceptable reproduction, but in no event may such charge exceed 25 cents per page").

The Court of Appeals did not attempt to determine whether respondents were "participants" under § 1002(7). See 828 F. 2d, at 152–153. We likewise express no views as to whether respondents were "participants" with respect to the benefit plans about which they sought information. Those questions are best left to the Court of Appeals on remand.

For the reasons set forth above, the decision of the Court of Appeals is affirmed in part and reversed in part, and the case is remanded for proceedings consistent with this opinion.

*So ordered.*

JUSTICE SCALIA, concurring in part and concurring in the judgment.

I join the judgment of the Court and Parts I and II of its opinion. I agree with its disposition but not all of its reasoning regarding Part III.

The Court holds that a person with a colorable claim is one who "'may become eligible' for benefits" within the meaning of the statutory definition of "participant," because, it reasons, such a claim raises the possibility that "he or she will prevail in a suit for benefits." *Ante*, at 117. The relevant portion of the definition, however, refers to an employee "who *is or may become* eligible to receive a benefit." There is an obvious parallelism here: one "may become" eligible by acquiring, in the future, the same characteristic of eligibility that someone who "is" eligible now possesses. And I find it contrary to normal usage to think that the characteristic of "being" eligible consists of "having prevailed in a suit for benefits." Eligibility exists not merely during the brief period between formal judgment of entitlement and payment of benefits. Rather, one *is* eligible whether or not he has yet been adjudicated to be—and, similarly, one can *become* eligible before he is adjudicated to be. It follows that the phrase "may become eligible" has nothing to do with the probabilities of winning a suit. I think that, properly read, the definition of "participant" embraces those whose benefits have vested, and those who (by reason of current or former employment) have some potential to receive the vesting of benefits in the future, but not those who have a good argument that benefits have vested even though they have not.

Applying the definition in this fashion would mean, of course, that if the employer guesses right that a person with a colorable claim is in fact not entitled to benefits, he can deny that person the information required to be provided under 29 U. S. C. § 1024(b)(4) without paying the $100-a-day damages assessable for breach of that obligation, 29 U. S. C. § 1132(c)(1)(B) (1982 ed., Supp. IV). Since, however, no em-

ployer sensible enough to consult the law would be senseless enough to take that risk, giving the term its defined meaning would produce precisely the same incentive for disclosure as the Court's opinion.