**Dominic SARACCO, Plaintiff,**

v.

**LOCAL UNION 786 BUILDING MATERIAL PENSION FUND, Defendant.**

**No. 89 C 08672.**

United States District Court, N.D. Illinois, E.D.

May 7, 1990.

Mark E. Wohlberg, Chicago, Ill., for plaintiff.

Anthony Pinelli and Don Devitt, Chicago, Ill., for defendant.

### MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

The plaintiff, Dominic Saracco, brought this ERISA action challenging the denial of

pension benefits by the trustees of the defendant, Teamsters Local Union 786 Building Material Pension Fund ("Fund"). The parties have filed cross-motions for summary judgment. In the alternative, the Fund has moved for dismissal on the ground that Saracco had failed either to exhaust his administrative remedies or to join indispensable parties necessary for resolution of certain issues of disputed fact. For the following reasons we grant summary judgment in favor of the Fund.

## Background

The Fund provides benefits to members of Local 786 under a pension plan ("Plan") authored by the Joint Union and Management Trustees ("Trustees"). The Plan provides that participants are eligible to receive benefits based upon the number of credits earned during each Plan year, which runs from September 1st to August 31st. The Plan contains reciprocity provisions in Article 4 which allow participants to combine service in several Locals to achieve sufficient credits to earn a pension. Article 5 of the Plan also establishes, however, that a break in service may cancel prior credits earned if an employee has not already earned sufficient credits to vest in the Plan before the break occurs.[1] Section 5.04(d) provides that, if at any time prior September 1, 1976, an employee has failed to earn at least one-quarter pension credit during twelve consecutive months, a permanent break in service occurs, voiding any past credits earned. Section 5.04(c) provides for breaks in service that may occur after August 31, 1976.

Since 1958, Saracco worked in several jurisdictions which allowed him to earn credits in the Chicago Truck Drivers Union and Teamster Locals 731 and 786 reciprocal pension funds. His work with Local 786 began some time in 1981. In 1987, Saracco sought a Reciprocal Pension Benefit from the Fund on the basis of disability. The credits he had earned with Local 786, however, were apparently insufficient, standing alone, to make him eligible for a pension. After contacting the other unions for whom Saracco had previously worked for a record of past credits earned, the Trustees were informed that Saracco had experienced breaks in service during the periods 1967–70, 1974–77 and 1979–81. Accordingly, the Trustees deemed any credits earned prior to each break in service to have been forfeited.

That determination, however, was not necessarily fatal to Saracco's claim for benefits, because the Plan further provides that an employee may "repair" the cancellation of credits caused by a permanent break in service:

> [I]f a person who had a permanent break in service before September 1, 1976 earns five (5) or more Pension Credits on the basis of Work in Covered Employment his previously accumulated Pension Credits forfeited due to a Permanent Break in Service shall be reinstated.

The Trustees therefore next considered Saracco's contention that after he came to work with Local 178 in 1981 he earned sufficient credits to repair his prior breaks in service and was therefore eligible for a pension prior to the onset of his disability in 1987. The Trustees, however, found that he had only earned 3.75 credits while under the Local 786 Plan.[2] Since that number was not enough to repair the breaks in service, the Trustees denied Saracco benefits under the Plan.

## Analysis

In earlier proceedings before this Court, Saracco had initially raised a number of factual issues concerning alleged inaccuracies in his prior work history. These issues provided the basis for the Fund's motion to

---

1. In order to vest in the Plan, an employee must have worked for contributing employers to the Plan or employers contributing to reciprocal plans for a period of time sufficient to earn credits amounting to 10 years of "Vesting Service."

2. Saracco had originally maintained that he had earned 4.75 credits with the Fund plus an addi-

tional credit on the basis of his disability, amounting to a total of 5.75 credits. Saracco has since abandoned any argument that he is entitled to an additional credit based on disability. Therefore, the parties agree that Saracco has not earned five credits working as a member of Local 786.

dismiss. Saracco has elected to withdraw these claims from our consideration, and instead has chosen to press only two remaining arguments based on undisputed facts.[3] Accordingly, we deny the Fund's motion to dismiss as moot.

■ Saracco first asserts that the Fund has admitted in its answer that he earned 9.2 service credits prior to 1968. Assuming that fact, Saracco argues that the Fund has waived any contention that an alleged break between 1967 and 1970 negated the 9.2 service credits that he earned. He therefore claims that, by combining the 9.2 credits with the 2.0 credits he earned from Local 731 in 1970–73, he became vested in a plan prior to any subsequent breaks in service in 1974–77 or 1979–81. The underlying basis for Saracco's proposition is flawed, however, because the Fund's admission that Saracco earned 9.2 service credits had nothing whatever to do with the issue whether those credits were subsequently cancelled by the 1967–70 break in service. The Fund has consistently maintained that a break in service occurred in 1967–70, and moreover, Saracco has withdrawn any contest to the facts underlying that determination. We therefore find Saracco's argument on this point to be without merit.

Saracco alternatively contends that the Fund should have allowed him to combine 1.9 years—earned in Local 731 subsequent to the 1974–77 break in service—with the undisputed 3.75 credits earned in Local 786 to reach the requisite five years in covered employment necessary to repair the break. Resolution of this issue therefore centers on the appropriateness of the Trustees' interpretation and application of Section 5.04 of the Plan as not allowing an employee to combine reciprocal credits in order to repair a break in service.[4]

■ Our standard of review of this issue is set forth in *Firestone v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 954–56, 103 L.Ed.2d 80 (1989), in which the Supreme Court held that actions of Trustees who are given discretionary authority under a plan to determine eligibility for benefits or to construe the plan's terms are to be reviewed

---

**3.** He therefore has apparently abandoned his claim that a break in service did not occur in 1968–69 because he allegedly worked for a contributing employer to local 731 during that period. *See* Saracco Aff. at ¶ 2.

**4.** We initially observe that the Trustees had found that a break in service occurred in 1979–81 and therefore determined that the 1.9 years were not relevant simply by virtue of the fact that they were cancelled by that break in service. *See* Hoff Aff. at ¶¶ 16, 25. Based on that determination, there accordingly would have been no credits to combine with the 3.75 undisputed credits Saracco earned with Local 786. Although that determination would appear to preclude consideration of the question as to whether an employee may combine credits under several plans in order to repair a pre–1976 break in service, the Fund has not directly raised the issue regarding the forfeiture of credit effect of the 1979–81 break (though the issue is implicit in Hoff's affidavit).

Saracco, however, briefly raises the issue in his response to the Fund's motion for summary judgment. There he acknowledges his understanding that Section 5.04(c) of the Plan addresses the circumstances in which a permanent break in service may occur after August 31, 1976. That section provides that

A person has a Permanent Break in Service if he has consecutive One–Year Breaks in Ser-

vice, including at least one after August 31, 1976, that equal or exceed the number of Years of Vesting Service with which he has been credited.

Unlike Section 5.04(d), which provides for a repair of permanent breaks in service occurring prior to September 1, 1976, Section 5.04(c) makes no provision for repair of a permanent break occurring after that date.

Saracco maintains that a break in service did not occur within the meaning of that provision because he had "enough years of vesting service from the Chicago Truck Drivers Union (9.2) to overcome [the finding of a] break." That explanation falls short in light of the fact that the credits earned with that union were cancelled because of the break in service that occurred in 1967–70. Thus, we do not see how they may figure into the calculation required by Section 5.04(c). In fact, in its reply, the Fund points out that Section 7.09(b)(2) of the Plan indicates that credits cancelled by a break in Service cannot count toward years of vesting service. Therefore, the Fund argues that the 9.2 credits cannot be considered in the calculation required by Section 5.04(c). Nevertheless, the Fund fails to advance any argument regarding the forfeiture effect, if any, resulting from the apparently valid determination that a permanent break in service occurred in 1979–81. Accordingly, we make no finding on this point and will consider only the issue before us.

on the basis of whether such actions are arbitrary and capricious. The Trust Agreement covering the Plan gives the Trustees the authority

> To determine all questions arising in the administration, interpretation and application of the Pension Plan, including questions of eligibility of Employees, the status of the Participants and their beneficiaries, and of any other person thereunder.

Thus, under the standard announced in *Firestone*, the Trustees' interpretation of the Plan with respect to Saracco's eligibility is entitled to deference unless proven to be arbitrary and capricious.

The Fund has interpreted Section 5.04(d) to mean that the five pension credits needed to repair the break in service may be earned based only on employment by an employer making contributions to the Local 786 Pension Fund and not to any other Local's pension fund. As evidence of the reasonableness of that interpretation, the Fund points to the language of Section 5.04 in conjunction with two definitions found in Article 1. Section 5.04(d) requires that the five credits be earned on the basis of "work in covered employment." Section 1.12 of the Plan defines "covered employment" as "employment for which an Employer is obligated to contribute to the Pension Fund...." Section 1.02 defines "Pension Fund" as "the Local 786 Building Material Pension Fund and its trust estate." In view of this language the Trustees determined that five credits were required with the Fund in order to repair the break in service.

Saracco maintains, however, that such an interpretation results in an arbitrary and capricious application of the specific provisions of the Plan because it contravenes the purpose of reciprocity as set out in Section 4.02:

> Reciprocal Pensions are provided under this Plan for Employees who would otherwise lack sufficient Pension Credit to be eligible for any pension because their years of employment were divided between different Reciprocal plans or, if eligible, whose payments would be less

than the full amount because of such division of employment.

Saracco's essential point is that, since an individual may combine the credits earned under several reciprocal funds to achieve a reciprocal pension, it makes no sense to interpret the provisions in Article 5 as not allowing him to combine credits in order to repair a break in service and revive credits previously lost. We disagree. The fact that the Plan allows an employee to combine reciprocal credits for the purposes of ultimately vesting under Article 4 does not mandate that the Plan must allow reciprocal credits to be combined to repair an otherwise permanent break in service as provided in Article 5. The two approaches cannot be regarded as mutually inconsistent, as Saracco contends. Indeed, even though past credits may have been cancelled because of a break in service, for the purposes of vesting, reciprocal credits earned after the break may still be combined and counted toward achieving a pension. The question whether past credits may be recovered is a different matter and therefore the remedy of repair of past credits provided for by the Plan is not at all dependent on the provisions concerning eligibility for a reciprocal pension. Conceivably the Plan might have allowed no remedy of repair at all. The fact that the Plan provides a means for reviving credits lost does not mean that the procedure for earning credits toward revival must be tied to those procedures pertaining to earning reciprocal credits towards ultimately vesting in several plans. Thus, although no reason has been advanced as to why repair credits are limited only to those earned under the Plan, we find that the equal application of that limitation by the Trustees to all potential participants in the Plan is neither arbitrary nor capricious.

### Conclusion

The Fund's motion to dismiss is denied as moot. We grant summary judgment in favor of the Fund and against Saracco. It is so ordered.