**Dominic SARACCO, Plaintiff–Appellant,**

v.

**LOCAL UNION 786 BUILDING MATERIAL PENSION FUND, Defendant–Appellee.**

No. 90–2257.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 7, 1991.

Decided Sept. 16, 1991.

Mark E. Wohlberg (argued), Chicago, Ill., for plaintiff-appellant.

Anthony Pinelli (argued), Chicago, Ill., for defendant-appellee.

Before FLAUM, RIPPLE and KANNE, Circuit Judges.

KANNE, Circuit Judge.

The underlying facts of this appeal are undisputed. After working for nearly three decades as a truck driver, Dominic Saracco became disabled in 1987. At the time of his disability, Mr. Saracco was a member of the International Brotherhood of Teamsters, Local Union 786, so he sought a reciprocal pension from the Local 786 Building Material Pension Fund. The fund's administrator (and its trustees on appeal) denied his application for a pension. His administrative remedies exhausted, Mr. Saracco then brought this ERISA action challenging the trustees' denial of his claim pursuant to 29 U.S.C. § 1132(a)(1)(B).[1] Following the filing of cross-motions, the district court granted summary judgment in favor of the defendant. *See* 739 F.Supp. 1154 (N.D.Ill.1990).

On appeal, Mr. Saracco makes three arguments in support of his right to receive a pension. First, he contends that the district court erred in analyzing the trustees' decision under the arbitrary and capricious standard of review. In the alternative, he maintains that the trustees' interpretation and application of the break-in-service rules and reciprocity provisions of the pension plan was arbitrary and capricious. Finally, he argues that the pension fund's admission in its answer that he had earned 9.2 credits in the Chicago Truck Driver's Union Fund precluded the defendant from later contending that he had forfeited these years due to a subsequent break in service. We address each point in turn.

In a § 1132(a)(1)(B) challenge of a denial of pension benefits, our standard of review is governed by *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). In *Firestone,* the Supreme Court held that a denial of benefits must be reviewed *de novo* unless "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 115, 109 S.Ct. at 956. If, however, the benefit plan gives the administrator discretion in such matters, challenges to his interpretations are to be reviewed under the arbitrary and capricious standard of review.

---

1. ERISA § 502(a)(1)(B) permits a plan participant to bring suit in order "to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

*Id.* In this case, the pension plan's trust agreement vests the trustees with discretion "[t]o determine all questions arising in the administration, interpretation and application of the Pension Plan, including questions of eligibility." Trust Agreement, § 1(b). Thus, our review of the trustees' decision is limited to a determination of whether their decision was arbitrary and capricious. *See, e.g., Rizzo v. Caterpillar, Inc.,* 914 F.2d 1003, 1008 (7th Cir.1990) (if plan gives administrator discretion, "arbitrary and capricious" standard of review is proper); *Fuller v. CBT Corp.,* 905 F.2d 1055, 1058 (7th Cir.1990) (where plan provides that trustees are "to construe and interpret the plan," trustees' interpretation is to be given deference); *Egert v. Connecticut Gen. Life Ins. Co.,* 900 F.2d 1032, 1035 (7th Cir.1990) (when plan administrator has "express discretionary authority ... to make benefits determinations, the appropriate standard of review is 'arbitrary and capricious.'") (citing *Reilly v. Blue Cross & Blue Shield United,* 846 F.2d 416, 419 (7th Cir.), *cert. denied,* 488 U.S. 856, 109 S.Ct. 145, 102 L.Ed.2d 117 (1988)).

█ The arbitrary and capricious standard of review, as this court has repeatedly noted, is deferential. *Fuller,* 905 F.2d at 1058 (under the arbitrary and capricious standard of review, a court can overturn the determination of the trustees only if "they abused their discretion—which is to say, that they were not just clearly incorrect but downright unreasonable.") (citing *Disher v. Information Resources, Inc.,* 873 F.2d 136, 140 (7th Cir.1989)); *Exbom v. Central States, Southeast & Southwest Health & Welfare Fund,* 900 F.2d 1138, 1142–43 (7th Cir.1990). We will uphold the trustee's "denial of a claim if the denial is based on a reasonable interpretation of the relevant plan documents." *Shull v. State Machinery Co. Employees Profit Sharing Plan,* 836 F.2d 306, 308 (7th Cir.1987). Thus,

> [i]f the trustee makes an informed judgment and articulates an explanation for it

that is satisfactory in light of the relevant facts, *i.e.,* one that makes a "rational connection" between the issue to be decided, the evidence in the case, the text under consideration, and the conclusion reached, then the trustee's decision is final.

*Exbom,* 900 F.2d at 1433 (citing *Smart v. State Farm Ins. Co.,* 868 F.2d 929, 936 (7th Cir.1989)). Under this standard of review, Mr. Saracco's challenge fails.

█ To be entitled to a Local 786 Fund pension, an employee must have worked for contributing employers to the pension plan for a period of time sufficient to earn credits amounting to ten years of "Vesting Service." At the time of his disability, Mr. Saracco had earned fewer than the ten-years credit he needed to vest in the Local 786 Fund. His failure to earn ten credits in the Local 786 Fund, however, did not necessarily preclude him from making a valid claim for a pension since the pension fund plan also provided that participants can combine service in several local unions in order to achieve sufficient credits to earn a reciprocal pension. Over the years, Mr. Saracco had earned over ten years credit in three teamster unions contributing to the reciprocal plans. But unfortunately, he had also experienced breaks in service which canceled those credits.[2]

Recognizing that this requirement might unjustly prevent some workers from obtaining a pension, the plan provided a safety-net and permitted an employee to "repair" the cancellation of credits caused by a permanent break in service by earning five pension credits on the basis of work in covered employment. *See* Trust Agreement, § 5.4(d). Accordingly, Mr. Saracco sought to demonstrate that he had repaired his break in service. When Mr. Saracco first applied for his disability pension, the Local 786 Fund's records indicated that he had earned only 2.25 pension credits in the five years prior to his disability. He subsequently informed the pension fund that he

---

2. If the participant suffers a permanent break in service (defined as the failure to earn at least one quarter pension credit during twelve consecutive months), prior earned credits are canceled if the employee has not already earned sufficient credits to vest in the plan. Trust Agreement, § 5.04.

had worked for the F. Smith Cartage Company from 1981 to 1987, but that no contributions or reports had been submitted by his employer. To substantiate his claim, he submitted records demonstrating that he had worked for, and been paid by, Smith Cartage during the five-year period in question. After the Local 786 Fund auditor reviewed the Smith Cartage records and submitted his report, the trustees determined that Mr. Saracco had earned an additional 1.5 credits for the five years of employment prior to his disability in 1982 for a total of 3.75 credits under the Local 786 Fund. So, even with the additional credits, Mr. Saracco still lacked the five pension credits needed to repair his break in service.

While acknowledging that he had not earned five credits in the Local 786 Fund, Mr. Saracco argued that he should be allowed to combine the credits he earned while working in Teamsters Local 786 and Local 731 (for a total of 5.65 credits) to achieve the five credits needed to repair his break in service and qualify for a reciprocal pension. The trustees disagreed, reasoning that they read the agreement as requiring Mr. Saracco to have earned all five credits in the Local 786 Fund in order to repair the pre-ERISA break in service.

Our review of the agreement satisfies us that the trustees' position (that all five credits must have been earned while in the service of Local 786) is consistent with the language of the plan's trust agreement. Section 5.4(d), which governs a participant's right to repair a break in service, provides that "if a person who had a permanent break in service before September 1, 1976, earns five (5) or more Pension Credits on the basis of Work in Covered Employment, previously accumulated Pension Credits forfeited due to a Permanent Break in Service shall be reinstated." Reference, in turn, to the pension plan's defini-

tions reveals that covered employment is "employment for which an Employer is obligated to contribute to the Pension Fund." Trust Agreement, § 1.12. And finally, the trust agreement defines "Pension Fund" as "the Local Union 786 Building Material Pension Fund." *Id.* at § 1.02. Thus, read as an integrated whole, the plan, as the trustees maintain, provides that a break in service can be repaired only if the employee earns five pension credits on the basis of employment for which an employer is obligated to contribute to the Local 786 Fund.

To counter the fund's argument, Mr. Saracco maintains that the Trustee's interpretation is arbitrary and capricious because it contravenes the plan's underlying rationale of reciprocity.[3] Essentially, his point is that, since Article 4 (Reciprocal Pensions) allows an individual to combine credits earned in different unions contributing to the reciprocal fund to achieve a reciprocal pension, it makes no sense to interpret the provisions of Article 5 (Pension Credits and Years of Vesting Service) differently and refuse to allow him to combine reciprocal credits in order to repair a break in service and restore credits previously lost. But, the fact that an employee is permitted to combine reciprocal credits for the purposes of ultimately vesting under Article 4 does not mandate that the plan allow reciprocal credits to be combined to repair an otherwise permanent break in service as provided in Article 5. As the district court observed, "[t]he question whether past credits may be recovered is a different matter and therefore the remedy of repair of past credits provided for by the Plan is not at all dependent on the provisions concerning eligibility for a reciprocal pension." *See* 739 F.Supp. at 1157. Nor does the pension plan's failure to articulate a reason for this requirement make its decision arbitrary and capricious.[4] The trustees did not need

3. The general purpose of the reciprocal pension provisions is to permit "[e]mployees who would otherwise lack sufficient Pension Credit to [qualify for a] pension [even though] their years of employment were divided between different Reciprocal Plans." *See* Trust Agreement, § 4.02.

4. At oral argument, counsel for the Local 786 Fund did suggest that administrative costs may be one reason for the differing treatments. Actuarial considerations also undoubtedly support this distinction. *Cf. Central States, Southeast & Southwest Areas Pension Fund v. Gerber Truck Serv., Inc.,* 870 F.2d 1148, 1151–52 (7th Cir.1989)

to justify the plan's differing treatment of reciprocal credits in the context of vesting in the plan and repairing a break in service in order to prevail; indeed, the plan could have complied with ERISA's requirements without providing any remedy of repair.

After reviewing the position of the trustees, we are convinced that the denial of benefits to Mr. Saracco was based on the language of the Fund and was not arbitrary and capricious. We are not unmindful, however, that our decision will adversely affect Mr. Saracco. We can only hope that Mr. Saracco's predicament will convince the trustees of the Local 786 Fund to take appropriate steps to prevent its recurrence.[5]

█ Finally, Mr. Saracco argues that the Local 786 Fund's admission that he had earned 9.2 credits in the Chicago Truck Driver's Union Pension Fund prevents it from now maintaining that those credits were forfeited by a subsequent break in service. Although the Local 786 Fund admitted that Mr. Saracco had earned 9.2 credits, it consistently argued throughout the proceedings before the district court, as well as on appeal in this court, that Mr. Saracco's 1967–70 break in service canceled his previously-earned credits. In any event, it is the terms of the pension plan—not the pleadings—that determine Mr. Saracco's eligibility for a pension. Here, the plan provides that "if a person has a Break in Service before he has acquired the right to a pension ... it has the effect of canceling ... his previously credited Years of Vesting Service, and his previous Pension Credits" unless repaired by subsequent service. *See* Trust Agreement, § 5.04(a). As previously discussed, Mr. Saracco failed to repair his break in service. The Local 786 Fund's admission that Mr. Saracco had earned 9.2 credits during the 1960s, therefore, does not alter the fact that his subsequent break in service canceled those credits.

(*en banc*) (discussing economics of pension funds).

5. Although it provides little solace for Mr. Saracco, during oral argument the Local 786

For the foregoing reasons, the decision of the district court is AFFIRMED.

Fund's attorney indicated that the trustees were aware of this issue and were considering changes in the repair rules along the lines of those suggested by Mr. Saracco.