**David CUDDINGTON, Plaintiff–Appellant,**

v.

**NORTHERN INDIANA PUBLIC SERVICE COMPANY (NIPSCO), Defendant–Appellee.**

No. 93–3705.

United States Court of Appeals, Seventh Circuit.

Argued May 17, 1994.

Decided Aug. 26, 1994.

James J. Nagy, Munster, IN (argued), for plaintiff-appellant.

David C. Jensen (argued), Russell W. Hahn, Alyssa Forman, Eichhorn, Eichhorn & Link, Hammond, IN, for defendant-appellee.

Before BAUER, WOOD, Jr., and EASTERBROOK, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

David Cuddington filed this lawsuit against Northern Indiana Public Service Company ("NIPSCO") seeking recovery of pension benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"). Cuddington argues that the NIPSCO Pension Committee violated his rights under the NIPSCO Pension Plan and 29 U.S.C. § 1132(a)(1)(B) when it denied his request for benefits.

## I. *BACKGROUND*

David Cuddington began his employment with NIPSCO on June 11, 1962, as an engineer in the quality assurance department. As a NIPSCO employee, Cuddington earned pension benefits under the NIPSCO Pension Plan (the "Plan") based on years of service and other qualifications. After approximately twenty-eight years of service with the company, around February 15, 1990,[1] NIPSCO terminated Cuddington because it was eliminating the quality assurance department as part of a company-wide work force reduction. All terminated employees were given a choice between severance packages. An employee could receive a severance payment either in one lump sum or over a six-month period. One advantage to choosing the latter option was that NIPSCO would continue to pay the premiums for the employee's medical insurance benefits. Cuddington chose option two.

During the six-month period he was receiving his severance payments, Cuddington applied for a disability pension under the Plan. On July 30 and August 8, 1990, Cuddington sent letters to Gary Pottorff, NIPSCO's Pension Committee Secretary, claiming he was unable to work and requesting a disability retirement pension. In support of his claim, Cuddington submitted letters from three doctors. One doctor commented, "In my

opinion, [Cuddington] is disabled at this time. This disability probably actually began in the mid–80's and has progressed to the point now where it is total, complete and irreversible."[2] The Pension Committee denied this request by letter dated August 24, 1990. Cuddington appealed this denial on March 5, 1991. The Pension Committee denied the appeal. It found no evidence of disability before February 15, 1990, and refused to treat the severance period as employment under the Plan.

In this lawsuit Cuddington claims that he is entitled to a disability pension because his disability existed before his termination, during the six-month period between February 15, 1990, and August 15, 1990, and continues until the present date.

## II. *ANALYSIS*

Cuddington raises two issues for our review. First, he contends that the district court incorrectly reviewed the Pension Committee's determination using the arbitrary and capricious standard of review. Second, Cuddington argues that the district court erroneously approved the Pension Committee's decision not to award him a disability pension. We find that the district court was correct in both respects and properly granted summary judgment in favor of NIPSCO.

### A. *Standard of Review*

We review the granting of a motion for summary judgment *de novo*, viewing all the evidence in the light most favorable to the plaintiff and according him the benefit of all reasonable inferences to be drawn therefrom. Summary judgment is appropriate if the record reveals that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986).

---

1. The parties dispute whether Cuddington's employment ended on February 13 or 15. However, the specific termination date is immaterial to this decision.

2. Cuddington's doctors found that he suffers from arthritis of his neck and lower back, hemorrhoids, fibromyalgia, and bilateral acoustic neuroma.

816

Our *de novo* review is governed by the same standards employed by the district court, *Deutsch v. Burlington Northern R.R. Co.*, 983 F.2d 741, 743 (7th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993); *McMillian v. Svetanoff*, 878 F.2d 186 (7th Cir.1989). Here the litigants disagree on what is the proper standard of review when evaluating a Plan Administrator's[3] denial of Cuddington's request for disability benefits. The district court applied an arbitrary and capricious standard of review which, of course, is advocated by NIPSCO; Cuddington argues that the court should instead have reviewed the administrator's decision *de novo*.

▪ In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Court specifically addressed the standard of review issue for actions under § 1132(a)(1)(B). Following trust law principles, the Court held that a deferential standard of review is appropriate when the plan administrator or other fiduciary is authorized to exercise discretionary power to determine eligibility for benefits or to construe terms of the plan. *Id.* at 115, 109 S.Ct. at 956–57. This circuit clearly has interpreted *Bruch* to mean as much. *Allison v. Dugan*, 951 F.2d 828, 832 (7th Cir.1992); *Saracco v. Local Union 786 Bldg. Material Pension Fund*, 942 F.2d 1213, 1214–15 (7th Cir. 1991). We find that this is the proper standard of review in this case because the Plan authorizes the Pension Committee to decide:

> All questions or controversies of whatsoever character arising in any manner or between any parties or persons in connection with this Plan or its operation, whether as to any claim for benefits as to the construction of the language of this plan or any rules and regulations adopted by the Committee, or as to any writing, decision, instrument or account in connection with the operation of the Plan....

The power to construe and interpret the Plan requires us to defer to NIPSCO's Pension Committee, despite the fact that the Committee "shall have no power to add to, subtract from or modify any of the terms of the Plan, or to change or add to any of the benefits provided by the Plan, or to waive or fail to apply any requirements of eligibility for a Pension under the Plan." *Bruch*, 489 U.S. at 115, 109 S.Ct. at 956–57; *Fuller v. CBT Corp.*, 905 F.2d 1055, 1058 (7th Cir.1990).

▪ In an effort to avoid the application of the arbitrary and capricious standard, Cuddington argues that a conflict of interest exists because the Plan Administrator is the company assisted by a committee. The committee members are appointed by NIPSCO and Article VIII requires that a majority of the committee members be officers or employees of NIPSCO. Because the committee is dominated by NIPSCO related persons, Cuddington argues that the committee has a conflict of interest when deciding claims for benefits under the Plan and we should review the claims *de novo*. We find this argument unpersuasive. As the district court properly noted, Cuddington has presented no specific evidence showing that the Pension Committee had a conflict of interest when deciding his claim. Just because the Pension Committee is dominated by NIPSCO employees does not automatically mean that a conflict exists. *See Van Boxel v. Journal Co. Employees' Pension Trust*, 836 F.2d 1048, 1050 (7th Cir.1987). NIPSCO does not receive any money from the fund or otherwise benefit from the denial of Cuddington's claim. *See* NIPSCO Pension Plan § 12.5 ("In no event shall the Company receive any amounts from the Trust Fund upon termination of the Plan"). Therefore, we reject this argument.

▪ In applying the deferential arbitrary and capricious standard of review we will uphold the plan administrator's "denial of a claim if the denial is based on a reasonable interpretation of the relevant plan documents." *Shull v. State Machinery Co. Em-*

3. Pension plans are typically managed by a plan administrator, trustee, or other fiduciary. The NIPSCO Pension Plan is administered by a plan administrator that is defined as the company assisted by a Pension Committee. The Plan states that NIPSCO is to appoint the committee members, and requires that a majority of the members of the Pension Committee be officers or employees of NIPSCO.

*ployees Profit Sharing Plan,* 836 F.2d 306, 308 (7th Cir.1987).

> "[A] court will not set aside the denial of a claim if the denial is based on a reasonable interpretation of the relevant plan documents." Nor will it do so where the trustee has based its decision " 'on a consideration of the relevant factors' " that encompass the " 'important aspect[s] of the problem' " before it. If the trustee makes an informed judgment and articulates an explanation for it that is satisfactory in light of the relevant facts, i.e., one that makes a "rational connection" between the issue to be decided, the evidence in the case, the text under consideration, and the conclusion reached, then the trustee's decision is final.

*Exbom v. Central States, Southeast & Southwest Health & Welfare Fund,* 900 F.2d 1138, 1142–43 (7th Cir.1990) (citations omitted). With these concepts in mind, we review the Pension Committee's decision to reject Cuddington's request for disability benefits.

### B. The Plan

Section 4.3 of the Plan describes the manner in which an employee qualifies for a Disability Retirement Pension: "A Participant shall be eligible for a Disability Retirement Pension in the event of disability or inability to perform regular services, as determined by the Company, if his employment is terminated [due to disability] . . . prior to June 1, 1990 and after he has completed twenty (20) or more years of Service. . . ." Cuddington argues that he is entitled to disability pension benefits under the Plan because he is permanently and totally disabled, a condition which existed before the termination of his employment with NIPSCO and continues until the present. Thus two periods are at issue: the period of employment before February 15, 1990, and the six-month period between February 15, 1990, and August 15, 1990.

■ First, the Pension Committee's determination that Cuddington was not disabled before February 15, 1990, was not arbitrary and capricious. As noted by the district court, NIPSCO presented adequate evidence showing Cuddington was able to work:

1) Cuddington had not requested any sick leave for twenty-one months prior to his termination; 2) he never requested a reduction in hours nor turned down any work assignments; 3) he always achieved the category of "Consistently Meets Job Expectations" or higher on his performance reviews; 4) Charles W. Kern, the director of Cuddington's department, never received complaints about Cuddington's job performance; and 5) Cuddington presented the Pension Committee with contradictory medical evidence.

This evidence supports the Pension Committee's decision and Cuddington identifies no error on this point.

■ Whether Cuddington is entitled to a disability pension based on a disability suffered after his termination is a more difficult question. Based on an amendment made to the Plan on February 27, 1990 (the "amendment"), Cuddington argues that he should be treated as an employee eligible for disability leave. The amendment states:

> If (1) an employee's employment with the Company was terminated effective February 15, 1990, or if an employee is offered an elect severance on or before April 1, 1990, as part of the Company's reduction in force, and (2) the employee elects to receive the employee's severance paid benefit over a period of up to six months as offered, then the period of severance pay will be treated as service under the Pension Plan, and the severance pay will be treated as compensation under the Pension Plan.

Because this amendment says that the period of severance pay "will be treated as service . . . and the severance pay will be treated as compensation," Cuddington argues that he was still a participant in the Plan and eligible to receive a disability pension. He also looks to section 3.2 which defines "service" as:

> A Participant's eligibility for and the amount of a benefit payable under the Plan to or on behalf of a Participant shall be determined by his period of Service under this Section 3.2. . . . Under this Article III, hours of employment shall include . . . Each hour for which an Eligible Employee

is paid, or entitled to payment for the performance of duties for the Company.

So Cuddington really is making two arguments in support of his claim that the severance payments should be treated as service. One, the amendment explicitly states as much, and, second, under section 3.2 he should still be treated as a Participant in the Plan because he was paid compensation. Although Cuddington's arguments are plausible, so is NIPSCO's position.

NIPSCO interprets the amendment differently. In the May 8, 1991, letter denying Cuddington a disability pension, the Pension Committee explained through counsel that the type of pension for which Cuddington was eligible to receive became vested on the date of termination, and the right to accrue additional pension rights ceased at that point. As stated in Section 3.3 of the Plan, "[u]pon termination of employment with the Company, all active participation in the Plan shall cease so that no further Service shall accrue, except to the extent provided below ... [All of which are instances of rights accruing due to subsequent reemployment]." The Pension Committee, through counsel, explained their interpretation of the amendment in the May 8, 1991 letter to Cuddington:

> [The amendment] expanded the benefit available to persons who were qualified for a Deferred Vested Pension. If a terminated employee elected to take his severance payment over a six month period rather than in a lump sum, the resolutions allowed the severance period to count as Service and the severance pay to count as compensation, for purposes of determining the amount of pension benefit to which a person was entitled.

In essence, NIPSCO interprets the amendment as only adding six months to Cuddington's total service for the purpose of calculating the amount of his deferred vested pension, but does not allow him to accrue additional benefits under the Plan. This is a reasonable and rational interpretation of the Plan documents and evidence before the court.

## III. CONCLUSION

Because we agree with the district court that Cuddington presented no evidence showing that the Pension Committee's decisions were arbitrary and capricious, the grant of summary judgment is

AFFIRMED.