941 F.2d 1207
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Cynthia M. NORMAN, Executrix of the Estate of Bruce E.
Norman, Plaintiff-Appellant,
v.
VIRGINIA ELECTRIC POWER COMPANY, d/b/a Virginia Power
Company, Defendant-Appellee.
 No. 91-2006.
 United States Court of Appeals, Fourth Circuit.
 Argued May 8, 1991.
Decided Aug. 19, 1991.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. Walter E. Hoffman, Senior District Judge. (CA-90-1121-N)
 Albert C. Selkin, White and Selkin, Norfolk, Va., for appellant.
 Donald Lester Creach, Hunton & Williams, Richmond, Va. (Argued), for appellee; Patricia K. Epps, Hunton & Williams, Richmond, Va., on brief.
 E.D.Va.
 AFFIRMED.
 Before DONALD RUSSELL, Circuit Judge, ROBERT J. STAKER, United States District Judge for the Southern District of West Virginia, sitting by designation, and FRANK A. KAUFMAN, Senior United States District Judge for the District of Maryland, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Plaintiff Cynthia M. Norman is the widow and executrix of the estate of Bruce Edward Norman ("Norman"). Norman was a longtime employee of Defendant Virginia Electric and Power Company ("VEPCO"), who, while at work in 1981, suffered an injury to his neck. After this injury, Norman's work performance so deteriorated that he was fired in 1985. The next year, Norman applied to his former employer for total and permanent disability benefits, but this request was denied by VEPCO. Norman then appealed this denial to federal district court, and the Court, finding no abuse of discretion present, affirmed the employer's decision. Also being unable to find an abuse of discretion, we likewise affirm.
 
 
 2
 On July 8, 1981, while employed as a boiler operator at VEPCO's Portsmouth Power Station, Norman was struck on the back of his neck by a pressure air hose, which had separated from an air lance. After this injury, Norman complained of severe unabating headaches, a constant "locust" sound in both ears, complete inability to tolerate any type of noise, left side numbness, and increased headache, nausea, and vomiting after exerting effort of any kind.
 
 
 3
 Between July 1981 and December 1982, Norman was examined by numerous physicians, including a neurologist, neurosurgeon, otolaryngologist, and psychiatrist. None of these doctors could find any physical cause for Norman's complaints, and several of them attributed his neurosis to a "character disorder." This was also the conclusion of Dr. Frederick Woodson, a psychiatrist who saw Norman every other week between January 1983 and September 1985.
 
 
 4
 Because of Norman's claimed sensitivity to noise, several doctors suggested that he be assigned to work in a low-noise environment. Thus, in November 1982, VEPCO assigned Norman to perform clerical duties in the power station's administrative office. Before this, Norman had worked only one day since his accident, claiming that the noise in the boiler room was disabling. While Norman's clerical work was initially acceptable, this supposedly changed around June of 1984 when his position was formally changed to "clerk" and he began receiving a lower rate of pay. Norman's work so deteriorated that on September 16, 1985, he was terminated for "poor performance."
 
 
 5
 At some point, Norman hired an attorney to attempt to receive disability retirement benefits from VEPCO. The company's plan, The Dominion Resources, Inc., Retirement Plan, provides for disability benefits for those who are: (a) eligible by age or years of service; (b) totally disabled; (c) permanently disabled; (d) due to a bodily injury or disease; (e) while employed by VEPCO. There is no question that Norman met the age or years of service requirement, but the question remains whether, while employed by VEPCO, he was totally and permanently disabled due to a bodily injury--specifically, that suffered in the July 8, 1981, accident.
 
 
 6
 Prior to Norman's termination at VEPCO, no doctor had declared him totally and permanently disabled because of the accident. In March 1988, though, Norman's then psychiatrist, Dr. E. Daniel Kay, referred him to Dr. John Grant, a board-certified neurosurgeon, who concluded that Norman's 1981 accident caused brain stem cerebellum damage, which resulted in permanent disability. Dr. Grant found that Norman's condition was deteriorating, and at this time the doctor took note of his patient's slow mentation, indistinct speech, and mildly wide-based gait. Dr. Kay adopted Dr. Grant's findings.
 
 
 7
 On August 15, 1986, before Dr. Grant's analysis but after Norman had been fired, Norman's attorney contacted VEPCO and asked that the company send him claim forms, so that a claim could be filed for Norman to receive total and permanent disability benefits. Rather than comply with this simple request, the administrator-designee of the retirement plan responded, on December 2, 1986, that Norman was not entitled to any such benefits:
 
 
 8
 You have asked that we forward the necessary forms to you in order for Mr. Norman to file a claim for "Disability Retirement." Please be advised that in order for Mr. Norman to be considered eligible for a disability allowance from our plan he must be determined to be "Totally and Permanently Disabled while employed." According to our records, Mr. Norman continued to work after his July 8, 1981, injury and, as you indicated in your letter, was terminated not because of injury, but for poor performance. It appears to us as if he is only now becoming disabled and was not totally and permanently disabled during his employment with this company. Therefore, it is our opinion that Mr. Norman is not entitled to disability benefits from the plan.
 
 
 9
 When Norman's attorney received this letter, he treated it as an outright rejection of any claim Norman might file. Thus, Norman, on January 29, 1988, filed an action in Virginia state court, removed to the United States District Court for the Eastern District of Virginia on February 19, 1988, to force VEPCO to pay him disability benefits pursuant to its plan and ERISA, 29 U.S.C. §§ 1001, et seq. After this action was filed, both sides moved for summary judgment, and the district court, on September 23, 1988, denied both motions and ordered VEPCO to provide Norman with the proper forms for filing a claim for total and permanent disability benefits.
 
 
 10
 VEPCO provided Norman with the necessary forms, and shortly thereafter these were completed and filed with the company, along with the affidavits of Drs. Kay and Grant. The claim went to VEPCO's Disability Benefits Committee ("DBC"), which was made up of six persons, two of whom were doctors. Dr. W.S. Dingledine was VEPCO's regular medical officer, while Dr. D.E. Slagel was an emergency room physician who served on an hourly basis for VEPCO as a medical advisor. The DBC asked its own two doctor-members to review Norman's medical records, including the affidavits of Drs. Grant and Kay, and make a recommendation as to whether Norman was totally and permanently disabled while working for VEPCO. Both doctors found that Norman was not so disabled, and this was the unanimous holding of the DBC.
 
 
 11
 As for the findings of Dr. Grant, Dr. Slagel easily explained them away. Although Dr. Grant specifically stated that Norman had suffered a cerebellum brain stem injury in the 1981 accident, which resulted in a long-term dysfunction in the coordination system of his nervous system, Dr. Slagel for some reason found this diagnosis to be "contradicted by [Grant's] statement that Mr. Norman required no special long-term medical treatment." Also, Dr. Slagel discounted the physical symptoms noticed in 1988 (slow mentation, indistinct speech, etc.), because they could have been the side effects of medications Norman was then taking. Finally, Dr. Slagel noted that Norman's MRI results were normal.
 
 
 12
 Norman appealed the DBC's decision to VEPCO's Administrative Benefits Committee, which likewise held that Norman was not entitled to disability benefits. Norman, on March 12, 1990, then appealed this decision to federal district court, in a continuation of his earlier proceeding. While pending before the district court, Norman committed suicide on June 13, 1990, and his widow, as executrix of his estate, has continued the action.
 
 
 13
 After Norman filed his complaint in district court, both sides moved for summary judgment. The Court heard oral argument, and on December 6, 1990, issued an Order and Memorandum Opinion granting VEPCO's motion and denying Norman's. While mentioning that it was concerned by Dr. Slagel's possible conflict of interest, and also hinting that the result might have been different were the standard of review de novo, the Court nevertheless found for VEPCO because it could not find that the company's actions were an abuse of discretion. Norman now appeals.
 
 
 14
 In Firestone Tire and Rubber Company v. Bruch, 109 S.Ct. 948 (1989), the Supreme Court held that the appropriate standard of review in ERISA actions under 29 U.S.C. § 1132(a)(1)(B), challenging denials of benefits based on plan interpretations, is de novo, unless the plan gives its administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan. See also De Nobel v. Vitro Corporation, 885 F.2d 1180, 1187 (4th Cir.1989) ("As the Bruch court made plain, what follows from the applicability of the abuse of discretion standard is that the trustee's interpretation of relevant provisions of the plan documents--hence the challenged denial of benefits--'will not be disturbed if reasonable' "). Norman does not deny that VEPCO's plan now under question vests discretionary authority in the administrator to determine benefits eligibility.
 
 
 15
 It appears that VEPCO has treated this case in a rather high-handed manner, and Dr. Slagel and the DBC probably dismissed Drs. Grant and Kay's analysis too easily. Also, Dr. Dingledine and, most likely, Dr. Slagel, did have conflicts of interest and in no way could they be said to be totally impartial advisors. Still, there was an overwhelming amount of medical evidence from when Norman was employed by VEPCO showing that his treating physicians then did not believe that his 1981 accident caused total and permanent disability. We thus find that VEPCO did not abuse its discretion when it denied Norman total and permanent disability benefits. The Court below has written a thorough and well-reasoned opinion, and we affirm on that Court's opinion. Norman v. Virginia Electric and Power Company, CA-90-1121N (E.D.Va. Dec. 6, 1990).
 
 
 16
 AFFIRMED.