**Charles ROYER and Janet Royer, Plaintiffs,**

v.

**SOUTHERN HEALTH PLAN, INC., Defendant.**

**No. 93–2614–M1/Bro.**

United States District Court, W.D. Tennessee, Western Division.

June 30, 1994.

Jack L. Halliburton, Taylor Halliburton Ledbetter Caldwell, Memphis, TN, for plaintiffs.

John I. Houseal, Jr., Glankler Brown Gilliland Chase Robinson & Raines, Memphis, TN, for defendant.

### ORDER AND MEMORANDUM OPINION

McCALLA, District Judge.

The complaint in this action was originally filed in the Circuit Court of Shelby County seeking reimbursement for medical expenses incurred by the plaintiffs, Charles and Janet Royer. They named as the defendant Southern Health Plan, Inc. (the Plan), a corporation which entered into a contract for health insurance with the plaintiffs. The defendant Plan subsequently removed the action to this Court under 28 U.S.C. § 1331 on the basis that the Plan was operated pursuant to the Employee Retirement Income Security Act of 1976, as amended, 29 U.S.C. § 1001 *et seq.*, otherwise known as ERISA.

In their complaint, plaintiffs allege that on May 1, 1992, they entered into an insurance contract called the "Apple Care Subscriber Contract Custom Option" plan offered by defendant as a group plan available through Mrs. Royer's employer.[1] The complaint further alleges that in November of 1992, Charles Royer incurred medical expenses covered by the Apple Care plan in excess of $40,000 and that, despite properly filing a claim, the Plan refuses to make payment for the expenses incurred. The defendant Plan answered the complaint denying that the medical expenses incurred by the plaintiffs were covered by the Apple Care plan. Specifically, the defendant alleges that Mr. Royer suffers from recurrent coronary artery disease which was present on May 1, 1992, when the contract took effect, and that the expenses are excluded under the contract's pre-existing condition clause.[2]

---

1. Janet D. Royer acquired the policy for her and her husband through her employer, the Memphis Convention and Visitors Bureau.

2. The portion of the Apple Care plan relied upon by defendant reads as follows:

IX. EXCLUSIONS

The following services are excluded from Coverage:

\*   \*   \*   \*   \*   \*

AB. services, supplies or charges for a condition, disease or illness, whether known or unknown, that existed in any degree prior to the effective date of coverage until the member's coverage has been in effect for twelve (12) months.

In *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court held that the denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) must be reviewed under a *de novo* standard.[3] In *Perry v. Simplicity Engineering,* 900 F.2d 963 (6th Cir.1990), the court provided further guidance on the issue of whether the *de novo* review is of the record before the plan administrator or whether the court can consider additional evidence not considered by the plan administrator. The *Perry* court concluded as follows:

> Although the Supreme Court did not discuss the meaning of de novo review in Bruch, we believe that Bruch contemplates that the district court will review the administrator's decision de novo, that is without deference to the decision or any presumption of correctness, based on the record before the administrator. Thus, Bruch does not require district courts to hear and consider evidence not presented to the plan administrator in connection with a claim. This view is consistent with the proper judicial role in ERISA cases and precedent.

*Id.* at 966.

In the instant case, the parties agree that the standard for review is that forth in *Perry v. Simplicity Engineering* above, and that this Court may consider only that evidence before the administrator in determining, after a *de novo* review, whether the claim was properly denied. Additionally, the parties stipulate that the total amount claimed under the policy is $35,709.41.[4]

In 1992, Mrs. Royer was employed by Memphis Convention and Visitors Bureau. On May 1, 1992, the plaintiff became eligible and elected to participate in her employer's health benefits plan, administered by the defendant. Her husband also elected to participate as her dependent. After Mrs. Royer and her husband had been on the plan approximately six months, Mr. Royer began experiencing chest pain and was admitted to Methodist Hospital Central. He was diagnosed with recurrent coronary artery occlusive disease and underwent cardiac catheterization on November 10, 1992, which revealed a significant amount of blockage in the arteries around his heart. Coronary artery bypass surgery was performed the following day.

At trial, the parties submitted a stipulation containing the medical records and letters reviewed by Ann Brown, M.D., an employee of Southern Health Plan, who determined that the medical expenses incurred by Mr. Royer were excluded by the pre-existing condition clause of the contract. The plaintiffs relied on these medical records and letters and presented no other proof.

The defendant Plan called Benjamin F. Scott, M.D., to the stand to testify generally regarding the procedure followed in reviewing the plaintiffs' claim and the conclusion of Dr. Brown. The Court, of course, in its *de novo* review, relies solely on the administrative record before the plan administrator at the time the decisions to deny coverage were made.

It is not disputed that in 1984 Mr. Royer had bypass surgery as a result of the coronary artery disease. The coronary angiography performed on Mr. Royer in 1992 shortly before surgery revealed that the bypass grafts attached in the 1984 operation had themselves become blocked as a result of the disease. On this basis, coverage was denied under the pre-existing condition clause of the contract.

After the initial denial, upon request of the claimants, the claim was re-reviewed by the administrator, this time taking into consideration letters submitted on Mr. Royer's behalf from Drs. Lemonds and Harrington, his

---

3. An exception to this rule exists where the benefit plan expressly gives the plan administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the plan's terms. This exception, however, does not apply in this case.

4. It appears that the total amount of charges were $41,435.90 and the amount that is payable under the policy (if the exclusion does not apply) is $37,830.40. The carrier paid $2,120.99 prior to determining that the exclusion for pre-existing condition applied in the case. Therefore, the total amount claimed under the policy is, as noted above, $35,709.41.

treating physicians. The plan administrator found that these letters added no new information and plaintiffs' claim was again denied.

The letter of Dr. Harrington, the cardiologist who performed the 1992 surgery, reads in pertinent part as follows:

> Mr. Royer was admitted to Methodist Hospital on 11–09–92 because of the acute onset of chest pain. Subsequent catheterization studies revealed a *recurrence of his coronary artery disease.* His pain was of recent onset, and even though he was *known to have coronary artery disease* and indeed, had a coronary bypass in 1984, he had been free of symptoms and had no knowledge of any further difficulty until just prior to this admission. He had been without any symptomatology until November, 1992.
>
> Therefore, his insurance should not be denied on the basis of pre-existing disease. His *recent reoccurrence of graft disease* probably was not present at the time he took out IPA insurance. Therefore, *unless,* he did not admit to having coronary surgery in 1984, or if you do not require *an exception* to his insurance stating that you would not pay *for any subsequent problem with coronary artery disease,* then you should indeed cover his cost relating to this illness.

(emphasis added).

The letter of Dr. Lemonds, the internist who performed the initial evaluation of Mr. Royer, reads in pertinent part as follows:

> During my initial evaluation in November of 1992 while taking his history, it was revealed to me that, yes indeed, *Mr. Royer does have a history of coronary disease.* In fact, he underwent bypass surgery as you well know in 1984, and he did quite well after this....
>
> I talked with Mr. Royer again, and he noted that he had been experiencing episodes of chest discomfort which he had not had for very long. In fact, he said that these began within the last two weeks prior to his coming here initially on November 4.... Therefore, I referred this patient to a cardiologist for further evaluation and, as you well know, he had a cardiac catheterization performed which revealed occlusion [of the coronary arteries]. *This is not really unexpected since he had coronary disease before* and he had had bypass grafting....

(emphasis added).

After a *de novo* review of the record before Dr. Brown, including the letters of Drs. Harrington and Lemonds, the Court concludes that the plaintiffs' claim was properly denied under the pre-existing condition clause contained in the contract. Indeed, the letters of Drs. Harrington and Lemonds, when reviewed *de novo* with the entire administrative file, actually support the conclusion that the disease (coronary artery disease), which led to Mr. Royer's chest pain, cardiac catheterization and bypass surgery in November, 1992, existed years prior to his entry into the defendant Plan.

Paragraph AB of the contract states that services or charges for a condition, disease or illness that existed "in *any* degree" prior to the effective date of coverage until the member's coverage has been in effect for twelve months are excluded from coverage. Accordingly, even though the blockage which caused Mr. Royer's pain did not exist to a degree sufficient to cause him pain on the date the contract took effect, there is no doubt that the disease which caused the blockage was present on May 1, 1992, and that the blockage was present in some degree prior to the May 1, 1992, contract date. Therefore, plaintiffs' claim under the policy for $35,709.41 for services in connection with Mr. Royer's November, 1992, surgery was properly denied by the defendant.

It is therefore ORDERED, ADJUDGED, AND DECREED that judgment be entered FOR THE DEFENDANT and that this case be and is hereby DISMISSED WITH PREJUDICE.