940 F.Supp. 474 (1995)
Arthur K. GOLDSTEIN, Plaintiff,
v.
GROUP INSURANCE PLAN FOR ADMINISTRATIVE AND MANAGEMENT EMPLOYEES OF FAIRCHILD REPUBLIC COMPANY, FARMINGDALE FACILITY; Fairchild Industries Pension & Retirement Committee, as Plan Fiduciary and as Plan Administrator; John Doe and Jane Doe, as members of the Fairchild Industries Pension & Retirement Committee; and Fairchild Industries, Inc., Defendants.
No. CV-93-513 (JG).
United States District Court, E.D. New York.
December 11, 1995.
*475 Edgar Pauk, Legal Services for the Elderly, New York City and Robert Liebross, Denver, CO, for Plaintiff.
David W. Silverman, Granik Silverman Sandberg Campbell Nowicki Resnik Hekker, New City, NY, for Defendants.

MEMORANDUM AND ORDER
GLEESON, District Judge.
Plaintiff Arthur K. Goldstein brought this action under Section 502(e)(1) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(e)(1), for damages and declaratory and injunctive relief in connection with the defendants' denial of plaintiff's request for particular health benefits. The following parties are joined as defendants: Fairchild Industries, Inc. ("Fairchild"), plaintiff's former employer; the Group Insurance Plan for Administrative and Management Employees of Fairchild Republic Company ("the Plan"); the Fairchild Industries Pension & Retirement Committee ("the Committee"); and Connecticut General Life Insurance Company ("CIGNA"). The latter two defendants are joined as fiduciaries of the Plan.
The complaint sets forth five claims. First, it asserts that the Plan breached its obligations to plaintiff by refusing to provide coverage for "cognitive remediation therapy," a type of treatment plaintiff required for memory problems caused by brain dysfunction. Second, it is claimed that in denying plaintiff the requested coverage, Fairchild and the Committee breached their fiduciary obligations to plaintiff in violation of 29 U.S.C. § 1104(a)(1). Third, the Committee is alleged to have failed, in violation of 29 U.S.C. § 1132(c)(1)(B), to timely provide plaintiff with information he requested about coverage available under the Plan, and owes a statutory penalty for this failure. Fourth, plaintiff claims that Fairchild and the Committee interfered with his attainment of benefits in violation of 29 U.S.C. § 1140, by usurping CIGNA's right to decide whether plaintiff's claim was covered and deciding it themselves, and by mischaracterizing the manner in which he ceased to work for Fairchild so as to preclude coverage. The fifth cause of action, which was asserted against CIGNA, has been dismissed, and CIGNA is no longer a party to the case. Plaintiff seeks a declaratory judgment stating that among other things, he is still covered by the Plan even though he ceased to work for Fairchild in 1986, and that the cognitive remediation therapy he seeks is within the Plan's coverage. In addition, plaintiff seeks to have this Court order the defendants to authorize payment for the proposed therapy. He also claims damages for defendants' failure to provide him with the requested Plan information, and for their alleged interference with his attainment of benefits, described in his fourth claim for relief.
Defendants have moved for summary judgment dismissing all the above-described claims for relief. Plaintiff has cross-moved for summary judgment with respect to the first three claims. He asserts that if his motion is granted he will withdraw the fourth claim.

BACKGROUND
Plaintiff was employed by Fairchild from 1979 until he was laid off effective December 12, 1986. He was initially hired as a Financial Analyst, and was promoted to Spares Administrator in 1982 and to Senior Spares Administrator on June 17, 1984, the position *476 he held when his employment was terminated.
Plaintiff was in a series of automobile accidents throughout his life, each of which impaired him to some degree. One of these occurred on March 23, 1984 while he was employed at Fairchild. After this accident he suffered memory loss and a consequent decline in his work performance. In March 1985, plaintiff was reassigned first to the Spares Administration Bill of Material Section, and then to the Funding Section of Spares Administration. In both cases, his supervisors expressed concern about whether he could perform successfully.
In 1985, plaintiff applied to CIGNA requesting benefits for cognitive remediation therapy, a course of treatment that he hoped would ameliorate his memory problems. CIGNA acknowledged and processed the claim, but never decided whether to grant it.
On July 30, 1986, plaintiff was involved in another automobile accident. His memory problems were at this time affecting his work capacity to such an extent that he could no longer perform the responsibilities of his position. On October 8, 1986, Fairchild prepared a special "work plan" for plaintiff to assist and monitor his performance for 90 days. Almost two months later, on November 21, 1986, plaintiff and 42 other employees were laid off effective December 12, 1986. Subsequently, Fairchild closed the facility at which plaintiff had performed his duties.
In 1987, the Social Security Administration determined that plaintiff was totally and permanently disabled, and found November 30, 1986 to be the date of disability onset. In 1988, Aetna, the insurer of the Plan's life insurance provisions, waived plaintiff's life insurance premium payments on the ground that he had been disabled since November 1, 1986. Finally, in July 1989, CIGNA found plaintiff eligible for long term disability benefits under Fairchild's Long Term Disability Plan which CIGNA administered. For purposes of these benefits CIGNA found that plaintiff's disability had began on November 22, 1986.
In 1990, plaintiff applied again to CIGNA for benefits to cover cognitive remediation therapy. CIGNA denied the claim on April 25, 1990, on the ground that the requested benefits were educational in nature and not within the Plan's coverage. Plaintiff appealed the denial, and on July 9, 1991, CIGNA affirmed its prior decision on the additional ground that plaintiff's coverage under the Plan had terminated on February 12, 1987. Subsequently, in a letter dated January 6, 1992, CIGNA informed plaintiff that Fairchild had made the determination that the coverage had ceased, and that all questions and appeals should be directed to Fairchild. Accordingly, plaintiff addressed an appeal to Fairchild on March 18, 1992.
In a decision issued in May 1992, the Committee denied plaintiff's appeal, relying on several provisions of the Plan which the parties agree control the outcome of the instant litigation. These provisions are contained in the Group Insurance Plan Summary Plan Description/Certificate ("Summary Plan Description" or "SPD"),[1] and set forth the circumstances under which insurance terminates. The first section, entitled "Termination of Insurance  Employees", reads as follows:
Your insurance will cease on the earliest date below:
 the date you cease to be in a Class of Eligible Employees or cease to qualify for the insurance.
* * * * * *
 the date your Active Service ends except as described below.
A further provision defines Active Service:
You will be considered in Active Service:
 on any of your Employer's scheduled work days if you are performing the regular duties of your work on a full time basis on that day either at your Employer's place of business or at some *477 location to which you are required to travel for your Employer's business.
An additional provision allows for continuation of medical insurance in the event Active Service ends due to disabling injury or sickness.
If your Active Service ends due to an Injury or Sickness, your insurance will be continued while you remain totally and continuously disabled as a result of the Injury or Sickness. However, the insurance will not continue past the date your Employer stops paying premium for you or otherwise cancels the insurance.
Total disability is defined in the following manner:
You will be considered Totally Disabled if, because of an Injury or a Sickness:
 you are unable to perform the basic duties of your occupation; and
 you are not performing any other work or engaging in any other occupation for wage or profit.
Finally, an extension of medical benefits is provided in certain circumstances.
In the case of all other benefits, an expense incurred after a person's benefits cease but within the Time Period shown below for that benefit, will be deemed to be incurred while he is insured if such expense is for an injury or a Sickness which causes him to be Totally Disabled from the day his insurance ceases until that expense is incurred.
Relevant Time Periods:

 Major Medical 1 year
 Any other benefits 3 months

The Committee concluded that plaintiff was not entitled to benefits under the Plan for three reasons. First, it determined that the end of his Active Service had been due to layoff rather than injury or sickness, and consequently had not triggered an extension of his medical coverage. Alternatively, applying the above-quoted medical benefits extension provision, the Committee found that had there been an extension of medical coverage, it would have been in effect for only one year after plaintiff's employment had ceased. Finally, the Committee opined that expenses for the type of care plaintiff sought were not available under the Plan.

DISCUSSION
In Gallo v. Prudential Residential Services, 22 F.3d 1219, 1223 (2d Cir.1994), the Second Circuit reiterated the standards that must be applied upon a motion for summary judgment:
First, summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Second the burden is upon the moving party to demonstrate that no genuine issue respecting any material fact exists. In considering that, third, all ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought. Fourth, the moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case. When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper.
Plaintiff takes issue with the Committee's determination that his Active Service ended due to layoff rather than disabling injury. He contends first that the term "Active Service" is not synonymous with "employment" under the terms of the Plan. Plaintiff relies on the requirement set forth in the Plan, that in order to be considered in Active Service an employee must both "work on a full time basis" and perform his "regular duties." These regular duties, plaintiff argues, are those which he was hired to perform, i.e. financial analysis and cost estimation. Therefore, the argument goes, because his impairments disabled him from performing the duties for which he had been hired, and because Fairchild accordingly modified those duties by October 1986, he cannot be found to have been in Active Service at the time of the layoff, even though he was still *478 employed. To support his position, plaintiff points out that both Aetna and CIGNA, who were interpreting contractual provisions similar to those at issue here, appear to have distinguished Active Service from employment in continuing his life insurance and disability coverage. He emphasizes in addition, that both Aetna and CIGNA determined that his disability had begun sometime before his employment terminated.
Although skillfully enunciated, plaintiff's argument must fail. First, he has not contested defendants' assertion that he was working full time until his employment terminated. Second, his assertion that the term "regular duties" refers to the duties he was hired to perform is without foundation, as plaintiff cannot point to any Plan provision that equates the two types of duties. Plaintiff alleges that his duties were altered in the last few months of his employment with Fairchild, ostensibly to accommodate his mental impairments. Although this allegation suggests that he was not then performing the duties for which he was hired, it does not suggest that he was not performing his "regular duties." His allegation that his impairments necessitated a change in his duties is thus not sufficient to create an issue of fact concerning whether he was performing his "regular duties" at the time of the layoff. The modified "work plan" imposed during the latter half of 1986, even if necessitated by plaintiff's mental condition, nevertheless operated to change his "regular duties." Plaintiff has not alleged that he was not performing these modified duties at the time he was laid off. Therefore, there is no basis to conclude that plaintiff's Active Service had ceased by that time.
Further support for this conclusion is found in the very existence of the Plan provision which allowed for continued coverage in the event Active Service ended due to disabling sickness or injury. The fact that the Plan's creators saw fit to include the provision strongly suggests that the term Active Service must be equated with employment. An employee who ceased Active Service but continued his employment, would not need to be protected by a contractual clause providing for the continuation of insurance beyond the end of Active Service. Such protection would be unnecessary because presumably as long as the employee remained employed he would not have to be concerned about losing his medical coverage. For this reason, the interpretation of Active Service urged on the Court by plaintiff would render the provision useless.
The same reasoning applies to the provisions Aetna and CIGNA relied upon in deciding to grant plaintiff the life insurance premium waiver and long term disability benefits. Both these provisions allowed benefits to continue in the event Active Service ended due to disability.[2] Once again, both provisions would be rendered unnecessary if the term "Active Service" were not synonymous with employment.
The definition of "Total Disability" set forth in the Plan provides further support for this conclusion. This definition provides that in order to be found disabled, an employee not only must be "unable to perform the basic duties of [his] occupation" but also must "not [be] performing any other work or engaging in any other occupation for wage or profit." This language indicates that an employee cannot be considered disabled as long as he continues to work for Fairchild (or any other employer for that matter), in any capacity. This limitation is built into the provisions that allow continuation of insurance where Active Service ends due to disability. Therefore, it is impossible to conceive of a situation in which an employee's Active Service could end due to disability, but his employment with Fairchild could continue. *479 However, this is exactly the scenario that plaintiff urges upon the Court.
Plaintiff relies heavily on the determinations by Aetna and CIGNA that he was entitled to continued coverage, to support his position that Active Service is not synonymous with employment. The fact that both companies determined that plaintiff's disability began before his employment with Fairchild ended is insufficient to change the result reached here. First, neither company's reading of the terms of the Plan are binding on Fairchild. Even if they were however, plaintiff has not raised an issue of fact concerning their respective interpretations of the term Active Service. It is significant that both companies placed the disability onset date in November, the very month that plaintiff was laid off. Had they subscribed to plaintiff's characterization of the term Active Service, they would have determined that plaintiff's disability had begun by October at the latest, the month in which plaintiff was placed on a special work plan to accommodate his disability. Instead they chose to find that disability began in the month that plaintiff was no longer officially employed by Fairchild (even though the actual physical termination was not effected until December 12, 1986).[3] Their choice evidences an interpretation of the term Active Service that is consistent with my own.
For these reasons, I conclude that plaintiff's Active Service ended when he was laid off by Fairchild, and that he is consequently not within the ambit of the Plan provision which continues medical coverage for employees whose Active Service ended due to disabling injury. Plaintiff has failed, despite a valiant attempt, to raise an issue of fact concerning the meaning of the term Active Service, or even the interpretation accorded to it by Aetna and CIGNA. In light of these results, especially the latter one, it is unnecessary to address plaintiff's contention, raised in support of his own motion for summary judgment, that CIGNA is the only entity empowered to grant or deny claims for medical benefits and that Fairchild usurped CIGNA's role by denying plaintiff's claim. There is no reason to believe that CIGNA's reading of the Plan provisions differed from the interpretation offered by Fairchild, the interpretation which I find to be correct. Therefore, a finding that Fairchild usurped CIGNA's role would not change the instant result.
The Court's conclusion concerning the meaning of Active Service also destroys the foundation of a second alternative claim plaintiff raises in support of his motion for summary judgment. Plaintiff contends that because he first requested coverage for cognitive remediation therapy in 1985 when he was still employed by Fairchild, he is entitled to the benefits he seeks. Plaintiff offers no support for this assertion, which appears to imply that an insurer who fails to respond to a claim is bound to honor all similar claims made in the future by those who were lucky enough not to have received an answer the first time they applied. This position is untenable. Furthermore, the conclusion reached above concerning the meaning of Active Service, instructs that even if plaintiff's 1985 application had been granted, coverage would have properly ceased when plaintiff was laid off.
The conclusion reached herein that plaintiff's medical insurance ceased because his Active Service ended due to layoff rather than disability, relies on the absence in plaintiff's complaint of a claim that Fairchild effected the layoff for the purpose of avoiding its ERISA obligations to the terminated employees. Although plaintiff contends that Fairchild interfered with his rights under ERISA by characterizing his termination as due to layoff rather than disability, (Compl. ¶¶ 58-61), he does not claim that the layoff itself was improper.[4] He does not even contend that after learning of his disability, *480 Fairchild wrongfully allowed him to continue in his employment knowing that a layoff was imminent. For this reason, plaintiff's fourth claim for relief, which is based on a violation of 29 U.S.C. § 1140, does not undermine my conclusion that plaintiff did not have a right to continued medical coverage under the Plan.
Finally, plaintiff demands an award of damages pursuant to 29 U.S.C. § 1132(c)(1)(B). This statute provides for penalties of up to $100 for each day of delay by the administrator of a benefits plan in providing plan information requested by a participant.[5] The decision whether to impose the penalty is within the discretion of the court. Plaintiff points out that on April 30, 1990, he asked Fairchild to provide him with a copy of the agreement setting forth the coverage available under the Plan, and that Fairchild denied the request initially. On October 26, 1990, Fairchild provided plaintiff with a copy of the SPD that had been issued in 1983, even though a version issued in 1987 was at that time controlling. Over three years later plaintiff obtained a copy of the 1987 SPD.
Plaintiff contends that this Court should award him a penalty of $100 for each day Fairchild delayed sending him the requested information. He argues that the period of delay should be held to have been three years rather than the few months that elapsed before the 1983 SPD was provided. This result should follow, he argues, because Fairchild intentionally and in bad faith, provided the SPD that they knew was not controlling, because they felt its terms were more favorable to them than those set forth in the 1987 version. Plaintiff provides no evidence to support the latter contention. In fact, the parts of the two summaries that have been provided to the Court suggest that their provisions are similar if not identical.
In an attempt to establish that an such award of penalties would be lawful, plaintiff contends that he should be considered a "participant" in the Plan, entitled to information about its provisions, because he has a colorable claim to the benefits he seeks. The Supreme Court indeed held in Firestone Tire & Rubber v. Bruch, 489 U.S. 101, 117-18, 109 S.Ct. 948, 957-58, 103 L.Ed.2d 80 (1989), that a former employee who has a colorable claim to vested benefits may be considered a "participant" in the benefit plan for purposes of § 1132.
The question whether plaintiff had a colorable claim to vested benefits need not be addressed here. Even if he did, I would exercise my discretion to decline to award the requested penalties. For one thing, I perceive no evidence of bad faith on the part of Fairchild, either in providing plaintiff with the 1983 SPD or in failing to provide information at all.
Indeed, plaintiff's belated claim for coverage could only have been a surprise to Fairchild, three years after his employment there had ceased. There is no evidence of any continued relationship throughout those three years. Rather, the record indicates that plaintiff appeared suddenly, demanding coverage for which payments had ceased three years earlier. Fairchild's response to this unexpected event seems reasonable to me and even suggestive of good faith on its part. The length of time that had passed, and plaintiff's silence during that time invited the reasonable belief that he was not a participant in the Plan. Even an administrator acquainted with § 1132 could have reasonably concluded that plaintiff did not even have a colorable claim to vested benefits that would render him a participant under the Firestone formulation. Under the statutory scheme, medical benefits like those in dispute here are not subject to vesting. 29 U.S.C. § 1051. Indeed, they may be withdrawn from participants at any time, as long as such action is effected in accordance with the plan of coverage. Serrato v. John Hancock Life *481 Ins. Co., 31 F.3d 882, 884 (9th Cir.1994). The parties to a benefit plan may of course provide for vesting in their contract. Wulf v. Quantum Chemical Corp., 26 F.3d 1368, 1377 (6th Cir.1994), cert. denied, ___ U.S. ___, 115 S.Ct. 667, 130 L.Ed.2d 601 (1994). Here, however, there was no reason to conclude that the medical benefits provided by the Plan were vested benefits. Indeed, the Plan provision governing continuation of benefits to those who were disabled by sickness or injury, stated that coverage would cease when Fairchild stopped paying premiums for the participant.
Fairchild's decision to send plaintiff the 1983 SPD rather than the 1987 version was also reasonable. Even if the administrator was uncertain whether plaintiff could be considered a Plan participant, he or she would have been fully justified in the belief that only the 1983 version contained information pertinent to plaintiff. After all, plaintiff's employment with Fairchild had ceased before the 1987 version was ever issued. For all these reasons, an award of penalties against Fairchild would be inappropriate and is accordingly denied.

ORDER
Plaintiff has failed to raise an issue of fact concerning the application of provisions in the defendant Plan which allow continuation of medical coverage to certain disabled participants. Accordingly, defendants' motion for summary judgment is granted, and plaintiff's motion for partial summary judgment is denied. The Clerk of the Court is advised that this Order closes the case.
SO ORDERED.
NOTES
[1] The parties dispute whether an SPD issued in 1983 or one issued in 1987 governs this matter. The Court has been provided with a full copy of the 1987 version and with a partial copy of the 1983 version, which lacks most of the relevant provisions. For this reason, and because I here address the defendants' motion for summary judgment, I apply the language contained in the 1987 version, which plaintiff argues is controlling.
[2] The life insurance provision on which Aetna relied reads:

If while insured, you terminate Active Service:
 before age 60, and
 because of Total Disability of 6 months or more ... up to $100,000 of your Life Insurance will be extended while you remain continuously Totally Disabled ...
The provision from the Group Long Term Disability Insurance Policy on which CIGNA relied states in pertinent part:
If the Employee's Active Service ends due to Total Disability for which Monthly Benefits are or may become payable, the insurance will continue while that Total Disability continues ...
[3] Their choice of dates in November on which to place the onset of disability is attributable more to internal administrative requirements than to any scientific calculation based on the features of plaintiff's disability.
[4] Were he to choose to make such a claim, he would face a high hurdle: establishing that the layoff of employees from a facility that was later shut down was effected for the purposes of avoiding obligations to provide those employees with benefits.
[5] The section reads:

Any administrator [] who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary ... within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.