YOUNGSTOWN ALUMINUM PRODUCTS, INC., et al., Plaintiffs–Appellants,

v.

MID–WEST BENEFIT SERVICES, INC., et al., Defendants–Appellees,

Association Plan Administrators, Inc., et al., Defendants–Appellees/Third–Party Plaintiffs,

Pulmonary Rehabilitation Services, et al., Third–Party Defendants.

No. 94–3778.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 14, 1995.

Decided July 31, 1996.

David H. Shaffer (briefed), Roger W. Strassburg, Jr. (argued and briefed), Joondeph & Shaffer, Akron, OH, for plaintiffs–appellants.

Paul L. Jackson (argued and briefed), Roetzel & Andress, Akron, OH, for defendants–appellees.

David.C. Comstock, Jr., Comstock, Springer & Wilson, Youngstown, OH, for defendant–appellee.

Before: ENGEL, MILBURN, and NORRIS, Circuit Judges.

ALAN E. NORRIS, Circuit Judge.

Plaintiffs-appellants appeal a decision of the district court denying their motion for summary judgment and granting defendants' motion for summary judgment on a suit brought under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1001–1461, to recover insurance benefits allegedly due under an employee welfare benefit plan. For the following reasons we reverse.

## I.

The relevant facts are undisputed. In September of 1990, plaintiff-appellant Charles P. Metzger ("plaintiff"), president of plaintiff-appellant Youngstown Aluminum Products, Inc. ("Youngstown"), learned that the company's health care provider intended to raise its insurance premiums significantly. Plaintiff instituted a search for a more affordable provider and eventually enrolled Youngstown in a health insurance plan sponsored by defendant-appellee Mid–West Benefit Services, Inc. ("Mid–West") and administered by several affiliated companies and

their employees (together, the "defendants"). On December 10, 1990, Youngstown paid the initial premium for the Mid–West plan, with the plan to become effective January 1, 1991. Youngstown did not let its previous insurance policy lapse until May 1, 1991, and, thus, Youngstown employees incurred no gap in their health insurance coverage.

Mid–West required that Youngstown employees fill out an enrollment form informing Mid–West of their individual medical histories. Once completed, nothing in the plan or the form required employees to update their responses.

The plan also included the following provision, entitled "Pre–Existing Conditions":

A pre-existing condition means any accidental bodily injury, sickness or pregnancy for which the member has consulted with or received advice of a medical practitioner, received any medical care, service or treatment, including the taking of drugs, medicines, insulin or similar substances, within the 180 day period before becoming covered with this plan. Any injury or sickness related to pre-existing conditions will also be considered a pre-existing condition. A condition will no longer be considered pre-existing after a person has been treatment free for a period of 180 days or enrolled in the plan for a period of 12 consecutive months. This limitation applies only to the condition for which treatment was received as stated above. The pre-existing clause is liberalized to provide benefits for such conditions when a group transfers into this plan from a previous plan without a lapse of coverage.

GROUPS OF 15 OR MORE: Benefits will be provided with no loss of coverage, providing the condition has been listed on the Health Statement and considered a covered expense.

Omitting to list a pre-existing condition will be cause for denial. ·

Although the last sentence of the first paragraph refers to a "pre-existing clause," the provision set out above is the only one in the plan dealing with pre-existing conditions. There is no other "pre-existing clause." Defendants appear to assume that there is. However, they cite us to no general exclusion of pre-existing medical conditions as covered expenses in the plan document, and we are unable to find one in the record provided us. Consequently, the only "exclusion" relating to pre-existing conditions is contained in the quoted provision's last clause that specifies "Omitting to list a pre-existing condition" as a cause for denial of benefits.

Plaintiff filled out his enrollment form on December 10. Despite suffering breathing problems due to years of smoking, plaintiff checked "No" in response to a question concerning an "indication, diagnosis or treatment in the [previous] (sic) five years" of any "cardiovascular disorder" or "respiratory disorder." He then signed his name below the words, "I understand and agree that incorrect disclosure of health information on this application may result in loss or denial of coverage." No facts indicate plaintiff had at any time visited a doctor concerning any cardiovascular or respiratory disorder in the period prior to filling out the enrollment form. However, the very next day plaintiff visited a doctor about getting an asthmatic "puffer" to help him breathe more easily. Plaintiff's doctor concluded that his breathing problem was the result of an abdominal aortic aneurysm. On January 11, 1991, plaintiff underwent surgery to repair the aneurysm. Respiratory failure complicated his recuperation from the surgery and necessitated his total dependency on a mechanical breathing device. Plaintiff remained hospitalized in intensive care for some nine months.

The medical charges incurred by plaintiff through May 1, 1991, were covered by Youngstown's previous health insurer. Plaintiff continued to incur medical charges after May 1 alleged to total more than $500,000. Mid–West denied coverage to plaintiff on these charges and offered as its reason: "This is a pre-existing condition not listed on your enrollment application and therefore not covered."

Plaintiff challenged his denial of benefits under ERISA, 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3), seeking to recover medical expenses arising out of the surgery. He argued that defendants erred in construing the

terms of the pre-existing conditions provision to deny him coverage. On cross-motions for summary judgment, the district court interpreted the pre-existing conditions as justifying a denial of benefits. It therefore granted defendants' motion for summary judgment.

## II.

■ We review the district court's grant of summary judgment *de novo. Lake v. Metropolitan Life Ins. Co.*, 73 F.3d 1372, 1376 (6th Cir.1996). Summary judgment is appropriate where "there is no genuine issue of material fact and . . . the moving party is entitled to judgment as a matter of law." Federal R. Civ. P. 56(c). We view the evidence and pleadings in the light most favorable to the nonmoving parties. *Lake*, 73 F.3d at 1376.

■ Initially, this court must determine whether to apply a *de novo* standard or an arbitrary and capricious standard of review to the interpretation of the pre-existing conditions clause. Only where a benefits plan clearly grants discretionary authority to the plan administrator "to determine eligibility for benefits or to construe the terms of the plan" will this court apply the more deferential arbitrary and capricious standard. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 114, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989). Since the Mid-West plan contains no such grant of discretionary authority, we interpret the plan *de novo*.

■ Because the parties' dispute centers on the language from the plan concerning pre-existing conditions, the question before us is one of contract interpretation. We must decide whether the provision authorized Mid-West to deny benefits to plaintiff.

The provision consists of three paragraphs, and we will endeavor to parse them one at a time. The first paragraph defines a "pre-existing condition," and is unambiguous. Under the circumstances of this case, in order for plaintiff's condition to satisfy the definition, he must have consulted a medical practitioner about the condition within 180 days prior to the plan's effective date of January 1, 1991. Since plaintiff visited his doctor on December 11, 1990, the definition

would appear to be satisfied. However, having a pre-existing condition, by itself, does not necessarily exclude coverage for treatment of that condition because it is only failure to list a pre-existing condition that is cause for denial of benefits under the plan. In any event, the "liberalization" clause found in the last sentence of the paragraph nullifies whatever effect plaintiff's satisfying the definition might have had, since that clause expressly provides coverage for pre-existing conditions as long as "a group transfers into this plan from a previous plan without a lapse of coverage." Here, there was a group transfer without a lapse.

■ As for the operation of paragraph two, we reject defendants' contention that it is to be read into the first paragraph so that the liberalization clause is conditioned upon the transferring group complying with a "Health Statement" listing requirement. Youngstown employees were required to fill out an enrollment form. They never received any document called a "Health Statement," and counsel for defendants is unable to offer any explanation why Health Statements were not issued to Youngstown employees. Nor can counsel offer a compelling reason why this paragraph must be read as an exception to the liberalization clause. A more sensible reading of the second paragraph is that it stands alone and applies to the situation when a *new* group is applying for coverage (some of whose members may have had coverage elsewhere), while the liberalization clause in paragraph one refers to *existing* groups, like Youngstown, that transfer group coverage to this plan.

Paragraph three provides that failure to list a pre-existing condition is cause for denial. This paragraph could be interpreted as trumping the application of the previous two paragraphs. Such a reading makes little sense, however, given that the liberalization clause says coverage will be provided for pre-existing conditions under the circumstances present here. Hence, another plausible reading is that paragraph three has no application if the liberalization clause applies.

■ We need not resolve any conflict concerning paragraph three, however, since un-

der the reading most favorable to defendants, the paragraph authorizes denial of benefits only if plaintiff omitted "to list a pre-existing condition." When plaintiff filled out his enrollment form on December 10, he had not previously consulted a physician about his condition. Hence, on that date his condition did not satisfy the definition of a pre-existing condition and so he had no pre-existing condition to list. Although he did have a pre-existing condition after December 10 (and prior to being covered by the plan), plaintiff was under no requirement to update the medical information he had provided on the enrollment form, and plaintiff was never again requested to provide the plan with information regarding pre-existing conditions. Therefore, the only exclusion relevant to pre-existing conditions was inapplicable, and the plan was not authorized to deny benefits for plaintiff's condition.

### III.

■ In addition to the argument discussed above, plaintiff raised several alternative theories of recovery. Because we conclude that the policy provides coverage, we have no need to reach these issues.

We must, however, consider whether plaintiff was entitled to continuation health coverage under the Consolidated Omnibus Budget Consolidation Act of 1985 ("COBRA"), 29 U.S.C. §§ 1161–1168. COBRA is an amendment to ERISA which ensures that employees who lose coverage under their company's ERISA plan do not go without health insurance before they can find suitable replacement coverage. COBRA is triggered by a qualifying event. One such event is retirement. 29 U.S.C. § 1163(2). Generally, an employee is entitled to continued COBRA coverage for 18 or 36 months. 29 U.S.C. § 1162(2)(A). COBRA coverage can be cut short, however, if the employee becomes entitled to Medicare. 29 U.S.C. § 1162(2)(D).

■ On August 31, 1991, plaintiff retired from Youngstown and requested COBRA continuation coverage. Mid–West turned plaintiff down because he was already entitled to Medicare. The district court held that plaintiff was not entitled to continuation coverage under COBRA. We disagree. The Mid–West plan specifically states, "If medical coverage under this plan is terminated due to termination of employment or the reduction of employment, medical benefits can be continued for up to eighteen (18) months." The plan specifies five events when continuation coverage will be terminated. None of these situations include age or Medicare entitlement. Thus, plaintiff was entitled to eighteen months of continuation coverage from the date of his retirement. COBRA sets minimum periods of continuation coverage, and if a health insurance provider chooses to offer more favorable coverage to plan participants, it may so provide in the documents that set forth the terms of the plan. *Cf. Branch v. G. Bernd Co.*, 955 F.2d 1574, 1577 (11th Cir.1992) (plan documents may provide for an election period beyond 60–day period set by COBRA, 29 U.S.C. § 1165(1)).

### IV.

The decision of the district court granting summary judgment to defendants and denying summary judgment to plaintiffs is reversed. This cause is remanded to the district court for a determination of the appropriate amount and nature of relief to be awarded plaintiff.