**Kenneth WILLIAMSON, et al., Plaintiffs,**

v.

**A.T. MASSEY COAL COMPANY, INC., et al., Defendants.**

**No. Civ.A. 3:97–1031.**

United States District Court, S.D. West Virginia, Huntington Division.

Dec. 28, 1998.

Anthony J. Majestro, Charles M. Love, IV, Masters & Taylor, L.C., Charleston, WV, for Kenneth Williamson, and, plaintiff.

Anthony J. Majestro, Charles M. Love, IV, Masters & Taylor, L.C., Charleston, WV, for Janice Williamson, plaintiff.

Daniel L. Stickler, Jackson & Kelly, Charleston, WV, John M. Poma, A.T. Massey Coal Company, Inc., Richmond, VA, Victoria J. Sopranik, Jackson & Kelly, Lexington, KY, for A.T. Massey Coal Company, Inc., defendant.

Daniel L. Stickler, Jackson & Kelly, Charleston, WV, John M. Poma, A.T. Massey Coal Company, Inc., Richmond, VA, Victoria J. Sopranik, Jackson & Kelly, Lexington, KY, for Rawl Sales & Processing Co., defendant.

Daniel L. Stickler, Jackson & Kelly, Charleston, WV, John M. Poma, A.T. Massey Coal Company, Inc., Richmond, VA, Victoria J. Sopranik, Jackson & Kelly, Lexington, KY, Armer Mahan, Lynch, Cox, Gilman & Mahan, Louisville, KY, for Underwriters Safety and Claims, Inc., defendant.

### ORDER

CHAMBERS, District Judge.

Currently pending before this Court is Defendant's motion for summary judgment

on Plaintiff's claims for benefits under the Employee Retirement Income Security Act (ERISA). For the following reasons, the Court **DENIES** Defendant's motion with respect to the ERISA claim.

## I.
## PROCEDURAL HISTORY AND FACTUAL BACKGROUND

In their Amended Complaint, Plaintiff Kenneth Williamson alleges that he was wrongfully denied long term disability benefits under an Employee Benefit Plan offered by Defendant. Plaintiff claimed that he generally suffered from persistent back and leg pain, debilitating stress, depression, and Crohn's Disease. In February of 1994, Mr. Williamson sought medical attention for his back and leg problems from his regular physician, Terence L. Gutgsell, M.D.

Mr. Williamson contends that he continued to have back pain and experienced numbness in his left leg in March of 1994. Thereafter, Mr. Williamson went to a neurologist for an evaluation and was ordered to one week of bed rest. At the conclusion of that week, Dr. Gutgsell recommended Mr. Williamson take an additional two weeks off from work due to exhaustion. At his deposition, Mr. Williamson testified that he returned to work on April 18, 1994, but upon his return, was required to work thirteen consecutive days because of a section move in the mine.[1] Feeling as if he could not work any longer, Mr. Williamson stopped working in May of 1994, and received salary continuation benefits for the next six months.

On October 10, 1994, Mr. Williamson applied for long term disability benefits with Jeffrey Gillenwater, the assistant human resource manager for Rawl Sales and Processing Company. Mr. Williamson submitted a number of medical records with his application. Over the course of

the next several months, Mr. Williamson also was referred by the Plan for independent medical evaluations (IMEs). Upon reviewing the medical records and reports, Mr. Williamson's application for long term disability benefits was denied by a letter dated June 12, 1995. Mr. Williamson appealed this decision to the Benefits Committee, which, by letter dated December 4, 1995, upheld the previous decision. Therefore, Mr. Williamson seeks review by this Court.

## II.
## STANDARD OF REVIEW

To engage in an analysis of the issues presented in this case, the Court must first set forth the standard by which the Court must be guided in its review of the ERISA Plan's decision. In *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the United States Supreme Court held "that a denial of benefits challenged under [29 U.S.C.] § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 115, 109 S.Ct. 948. If the benefit plan gives the administrator or fiduciary discretionary authority, the denial of benefits should be reviewed for abuse of discretion. *Id.*

The Supreme Court in *Firestone* went on to explain that "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" *Id.* (quoting *Restatement (Second) of Trusts* § 187, cmt. d (1959)). In *Doe v. Group Hospitalization & Medical Services*, 3 F.3d 80 (4th Cir. 1993), the Fourth Circuit provided guid-

---

1. According to Defendant, a section move entails moving a working section of the mine to a different location.

ance about how to analyze a fiduciary's decision when that fiduciary has a substantial conflict of interest. *Id.* at 84–87. According to the court in *Doe,*

> when a fiduciary exercises discretion in interpreting a disputed term of the contract where one interpretation will further the financial interests of the fiduciary, we will not act as deferentially as would otherwise be appropriate. Rather, we will review the merits of the interpretation to determine whether it is consistent with an exercise of discretion by a fiduciary acting free of the interests that conflict with those of the beneficiaries. In short, the fiduciary decision will be entitled to some deference, but this deference will be lessened to the degree necessary to neutralize any untoward influence resulting from the conflict.

*Id.* at 87. In this case, the Court concludes that the standard articulated in *Doe* applies because the benefit plan gives the defendant discretionary authority, but the defendant profits directly if it denies benefits to a plan participant. Therefore, the Court will apply the modified abuse of discretion standard recognized in *Doe.*

This conclusion is supported by the decision in *Bedrick v. Travelers Insurance Co.,* 93 F.3d 149 (4th Cir.1996). In *Bedrick,* Travelers Insurance Company both funded and administered medical insurance provided under an ERISA plan. 93 F.3d at 151. Although the Fourth Circuit found there was "no plan-wide grant of discretion to Travelers," the insurance policy contained a "medically necessary" restriction on benefits which permitted Travelers to exercise discretion in determining whether benefits would be awarded. *Id.* at 152. Given that this discretion to determine coverage directly affected Travelers' financial condition, the Fourth Circuit applied the standard in *Doe* and stated that "[i]nasmuch as the law is highly suspect of 'fiduciaries' having a personal interest in the subject of their trust, the 'abuse of discretion' standard is not applied in as deferential a manner to such plans." *Id.*

at 152 (quoting *Firestone,* 489 U.S. at 115, 109 S.Ct. 948). Moreover, the court stated that ERISA requires a " 'full and fair review' of all denied claims by an 'appropriate named fiduciary.' " *Id.* at 153 (quoting 29 U.S.C. § 1133(2); other citations omitted). In fulfilling this goal, a fiduciary "must act 'solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits . . . and defraying reasonable expenses.' " *Id.* at 154 (quoting 29 U.S.C. § 1104(a)(1)(A)). Moreover, the requirement of a "full and fair review" promotes resolution of disputes by plan administrators "in an efficient, streamlined, non-adversarial manner," while ensuring plan participants are "protected from arbitrary or unprincipled decision making." *Ellis v. Metropolitan Life Ins. Co.,* 126 F.3d 228, 236 (4th Cir. 1997).

Similar to the facts in *Bedrick,* the discretion in the present case arises with Defendant deciding whether a plan participant fits within the policy's definition of "disabled." Defendant has a direct financial interest in determining whether or not a participant is disabled. If a participant is found not disabled, Defendant retains its financial resources, but, when a participant is found disabled, Defendant sustains the financial burden of paying the participant benefits. Clearly, this situation presents a substantial conflict of interest between Defendant's decision making authority and a participant's interest in receiving benefits. As stated in *Doe,* "[e]ven the most careful and sensitive fiduciary in those circumstances may unconsciously favor its profit interest over the interests of the plan, leaving beneficiaries less protected than when the trustee acts without self-interest and solely for the benefit of the plan." *Doe,* 3 F.3d at 86–87. Therefore, the Court will examine the decision to deny benefits to ensure that it is consistent with the exercise of discretion by a fiduciary acting free of conflict and that the Plan met its duty under ERISA to conduct a " 'full and fair review' of . . . [the] claim[ ]

by an 'appropriate named fiduciary.'" *Bedrick*, 93 F.3d at 153 (quoting 29 U.S.C. § 1133(2) other citations omitted).

## III.
## DISCUSSION

■ In the present case, Mr. Williamson complains that the Plan, from its initial denial through the subsequent review by the Benefits Committee, ignored medical evidence supportive of his claim while unfairly focusing on medical evidence from its "independent" medical evaluations and committed several procedural irregularities which affected the outcome of the determination. Upon review of the evidence, the Court agrees with the former criticism and finds the initial denial of benefits by letter dated June 12, 1995, misstates critical medical evidence and explicitly misconstrues the Plan's definition of disability. Indeed, the Court finds the initial denial letter itself reveals the Plan's inconsistent analysis of the medical evidence.

The initial denial letter summarizes the Plan's interpretation of the medical records and purports to explain its decision. While noting from Dr. Gutgsell's reports that the x-ray and CT scan from February 1994, did not demonstrate degenerative disc disease, the denial letter makes no reference to Dr. Gutgsell's clearly stated impression that Mr. Williamson's back problems, diagnosed then as muscoligamentous strain, nonetheless prevented him from working. Mr. Williamson remained under his care through the claim process, and Dr. Gutgsell submitted at least one other report before the Plan's initial denial. This report, dated April 17, 1995, was both misconstrued and largely ignored by the Plan. Dr. Gutgsell emphasized in this report that Mr. Williamson had remained under his care since February 1994, for "ongoing problem with back and leg pain, depression, anxiety, and a disabling skin condition called neurodermatitis related to chronic anxiety and depression[,]" and Dr.

Gutgsell opined that plaintiff was "100 percent disabled...." The denial letter ignores the treating doctor's opinion by citing the absence of "documentation of the herniated disc that Dr. Gutgsell references as a basis for disability." However, Dr. Gutgsell did not base his conclusion on finding a herniated disc. In essence, Defendant minimizes Dr. Gutgsell's conclusion as being unsupported by the findings because his first report showed that Mr. Williamson was unable to work but was expected to recover after treatment, even though his later report showed Mr. Williamson's continuing inability to work. The flaw in the Plan's reasoning is its failure to consider the reports together, recognizing that the earlier reports when disability commenced would naturally suggest treatment and anticipate recovery, to fairly assess his course over this period of time.

Moreover, in the analysis of Dr. Gutgsell's findings, the denial letter states "[e]vidence of compressive lumbar radiculopathy has not been provided." This statement is important because Mr. Williamson's symptoms of low back pain and numbness radiating into his left leg produce his primary, although not exclusive, disabling condition. Yet, the denial letter's recitation of the medical evidence fails to mention the impression shared by Drs. Blake and Kenneth B. Graulich that Mr. Williamson was suffering from lumbar radiculopathy. Again, the Plan's initial decision seems to set up straw men and knock them down, rather than fairly consider the evidence.

The Plan's denial also reveals a misunderstanding of its own definition of disability, which not only includes permanent conditions but also those of "long, continued, and indefinite duration[.]" The Plan discounts the early findings reported by Drs. Gutgsell, Blake, and others at the beginning of the disability period because they indicate possible recovery following treatment. The Plan then finds that the diagnoses of compressive lumbar radiculo-

pathy by Dr. Blake and of depression and stress by Phil Pack, a certified clinical psychologist, were not disabling conditions because they were not "expected to last ... [Mr. Williamson's] entire life." However, permanency is not a requirement under the Plan's definition of disability. The Plan's misstatement of the duration component underscores its misinterpretation of the medical evidence. Instead of considering Mr. Williamson's condition from February 1994, to the date of its decision, the Plan attempts to ignore, isolate, and narrowly interpret the medical findings favorable to Mr. Williamson and impose a duration requirement which does not exist. *See generally McGraw v. Prudential Ins. Co. of Am.*, 137 F.3d 1253, 1260 (10th Cir.1998) (holding it is unreasonable for a plan to add a "potential for significant improvement" requirement to its definition of "medically necessary"). To the extent that the phrase "long, continued, and indefinite duration" could be considered ambiguous, the Fourth Circuit held in *Doe* that any ambiguity in the policy terms must be resolved in favor of the beneficiary because Defendant wrote the plan. *Doe*, 3 F.3d at 89.

The Plan's unfair analysis of the evidence extends to its consideration of the report provided by the Plan's own examining physician, Dr. Graulich. The denial letter tersely states that Dr. Graulich's October 27, 1994, report confirmed that the CT scan showed no herniated disc. What the denial letter does not mention is Dr. Graulich's impression that Mr. Williamson suffered from degenerative disc disease with L–5 radiculopathy and that his low back pain was highly likely to be permanent. Furthermore, Dr. Graulich urged a "vigorous course of active physical therapy" and opined that, with such a program, Mr. Williamson "could make a good recovery and be able to return to work." Implicitly at least, this statement indicates Plaintiff's inability to perform his job at that time due to his back pain. Dr. Grau-

lich went on to state that, if radiculopathy was confirmed, Plaintiff would be restricted to "only light to medium labor in his mine job," presumably permanently. These findings surely outweigh the inconclusive CT scan mentioned briefly by Dr. Graulich, which was the only point from Dr. Graulich's report referred to in the denial letter. In addition, the denial letter next states that "NO tests were performed to confirm compressive lumbar radiculopathy." (Emphasis original). However, since Dr. Graulich was the Plan's chosen examiner, the Plan could have asked for such tests if it believed such tests were necessary to fairly and accurately diagnose Mr. Williamson's condition. *See Vega v. National Life Ins. Serv., Inc.*, 145 F.3d 673, 680 (5th Cir.1998) (holding that a plan administrator faced with a conflict of interest has a "duty to conduct a reasonable investigation includes a full and fair review of all pertinent information reasonably available to the administrator" (footnote omitted)).

The last element of the Plan's rationale was supplied by its second IME, performed by Matt Vuskovich, M.D. In his report of January 27, 1995, Dr. Vuskovich diagnoses Mr. Williamson with "[m]ild degenerative changes of the lumbar spine," but he goes to considerable lengths to refute any connection between Mr. Williamson's back and leg pain and his degenerative condition. What Dr. Vuskovich fails to refute, however, are Mr. Williamson's persistent symptoms of back and leg pain consistent with radiculopathy and the weight of medical evidence from Drs. Gutgsell, Blake, and Graulich. Whether the precise cause of Mr. Williamson's back and leg pain is from degenerative disc disease, compressive lumbar radiculopathy, muscoligamentous strain, or all these conditions, the medical evidence taken as a whole, with the correct definition of disability applied, should have led the Plan to a different conclusion at the initial stage.[2]

---

2. In addition, the Fourth Circuit has suggest-

ed in two unpublished decisions that greater

The review by the Benefits Committee offers no better basis for the Plan's denial. The written decision provides scant explanation for the decision except to restate the Plan's definition of "disabled" and its conclusion that Mr. Williamson did not meet this definition. In this respect, the Fourth Circuit held in *Ellis* that "[t]he notice requirement for the decision on review must be every bit as explicit as an initial denial notice in terms of providing specific reasons for the continued denial and specific references to the pertinent plan provisions." 126 F.3d at 237. In *Ellis* after a review of all the documentary evidence considered by the plan, the court determined the inadequacy of the review decision did not prejudice the plan participant. Here, the Court finds that the inadequacy of the final denial notice bore a causal connection to the incorrectness of the initial decision. The Benefits Committee failed to consider the evidence as a whole in determining whether Mr. Williamson fit within the definition of "disabled." This inadequate explanation by the Benefit Committee of its denial of Mr. Williamson's claim fails to meet the standard announced in *Ellis*. More telling than the Benefit Committee's denial, however, are the minutes of its meeting which state "the Committee concurred with the basis for denial outlined in the 6/12/95 denial letter." Thus, it appears that the Benefits Committee essentially adopted the same reasons stated in the initial denial letter despite evidence to the contrary.[3]

Specifically, Dr. Gutgsell's office notes dated May 30, 1995, and his report dated June 14, 1995, the notes of Leon J. Ravvin, M.D., dated June 7, 1997, and the notes of Ralph J. Caldroney, M.D., dated June 26, 1995, all provide further evidence supporting Plaintiff's claim. In particular, these records indicate Mr. Williamson's inability to stand, bend, squat, and stoop have a direct effect upon his ability to perform his job, which would require him to walk underground for considerable time in low-roof mines. Likewise, Dr. Gutgsell, who treated him for depression, stress, and then exacerbation of his Crohn's disease, and Mr. Pack provided substantial evidence of Mr. Williamson's emotional difficulties. These conditions would obviously interfere with his ability to deal with mine inspectors and oversee mine operations as a foreman.

This Court concludes that Defendant failed to exercise its discretion free of its conflicting loyalties. The initial denial and its later affirmation by the Benefits Committee reveal an adversarial approach, even if unintentional, to the review of the medical evidence. The initial denial is fraught with inconsistencies between its analysis and the underlying medical records. As the Benefits Committee produced no better analysis of the evidence and no new grounds for denial, Plaintiff was deprived of his right to a full and fair review.

## IV.
## CONCLUSION

In light of the foregoing considerations and evidence reviewed by this Court, the

---

weight should be given to the opinions of a participant's treating physicians over those of a physician conducting an IME. *See Edmonds v. Hughes Aircraft Co.*, 145 F.3d 1324, 1998 WL 228200 (4th Cir.1998); *Smith v. Champion Int'l Corp.*, 125 F.3d 848, 1997 WL 592853 (4th Cir.1997).

3. Furthermore, while the correspondence prior to this meeting and the Benefits Committee's decision denying Mr. Williamson benefits lists the names of physicians who supplied medical information, the Court is not certain if the parties know what specific medial records were considered. The Benefits Committee apparently destroyed its records to preserve Mr. Williamson's confidentiality and, at least in the summary judgment pleadings, the parties do not provide the Court with records from each provider listed. The Court does not ascribe to Defendant the evil motives argued by Plaintiff as the reason for destruction of the Benefit Committee members' copies. However, for purposes of this summary judgment motion, the Court assumes that the medical information attached to Plaintiff's response was not substantially refuted by the other medical evidence which was not made a part of this record.

Court finds that the Benefits Committee abused its discretion when it reviewed the evidence and issued its terse denial of Mr. Williamson's claim. Accordingly, the Court **DENIES** Defendant's motion for summary judgment on Plaintiff's ERISA claim.