

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-20-2005

# Grossmann v. Marriott Intl Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2916

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

## Recommended Citation

"Grossmann v. Marriott Intl Inc" (2005). *2005 Decisions.* Paper 808.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/808

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

—————————

No. 04-2916

—————————

JOEL GROSSMAN,
                                    Appellant
                v.

MARRIOTT INTERNATIONAL, INC., and
LIBERTY LIFE ASSURANCE COMPANY OF BOSTON,
A MEMBER OF THE LIBERTY MUTUAL GROUP

—————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Civ. No. 02-cv-07686)
District Judge:   Honorable Ronald L. Buckwalter

—————————

Submitted Under Third Circuit L.A.R. 34.1(a)
July 15, 2005
Before:   SLOVITER, McKEE and WEIS, Circuit Judges.

(Filed July 20, 2005)

—————————

OPINION

—————————

WEIS, Circuit Judge.

        As a consequence of bipolar disease, plaintiff became disabled in 1999

from his position as an accountant and controller for Marriott International, Inc.  He

1

received benefits from a long term disability plan funded and administered by Liberty Life Assurance Company. Although plaintiff initially received disability benefits, he challenged the administrator's decision to terminate the payments. The District Court found against plaintiff. We will affirm.

The Plan provided disability benefits for claims involving mental illness for a two-year term that expired on July 2, 2001. Plaintiff also received additional payments for a period ending on July 27, 2001 during which he was hospitalized. This additional benefit was granted by the plan's "extended treatment" provision which requires "continued care that is consistent with the American Psychiatric Association's standard principles of treatment, and is in lieu of Hospital or Institutional confinement."

The insurance company terminated payments after plaintiff left the hospital in July 2001 because plaintiff did not meet the extended care requirement. After conducting an internal review procedure requested by plaintiff which included additional medical evaluation, the company denied reconsideration and closed its file on October 4, 2001.

Plaintiff retained counsel and after fruitless attempts to have the insurance company reconsider, filed suit in the District Court asserting claims under ERISA, 29 U.S.C. § 1132(a)(1)(B), and bad faith under state law, 42 Pa. Cons. Stat. Ann. § 8371 (West 1998). The District Court granted summary judgment for the defendants, concluding that there "was an objective and reasonable basis for [the insurance company]

to find that Plaintiff was not engaged in an extended treatment plan in lieu of hospitalization as required under the Plan for the continuation of benefits."

As the District Court observed, there are no material facts in dispute. The issue is whether the insurance company as administrator properly exercised its discretion in interpreting the extended care provision of the plan.

The standard of review is an important element in resolution of the dispute presented here. In considering that issue, the District Court correctly began with Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989), where the Supreme Court held "a denial of benefits . . . is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." That discretion is not limitless, as the Court went on to say, "[o]f course, if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighted as a 'factor in determining whether there is an abuse of discretion.'" Firestone Tire & Rubber Co., 489 U.S. at 115 (quoting Restatement (Second) of Trusts § 187, comment d (1959)).

Pinto v. Reliance Standard Life Ins. Co., 214 F.3d 377 (3d Cir. 2000), discussed at length conflict of interest considerations where an insurer both paid and determined eligibility for benefits. There, we recognized the inherent conflict of interest present and the necessity to reconcile it with Firestone Tire & Rubber Co.'s deferential

3

standard of review. We concluded that the arbitrary and capricious formula should apply, but that it should calibrate the "intensity of our review to the intensity of the conflict." Pinto, 214 F.3d at 393. District courts should "consider the nature and degree of apparent conflicts with a view to shaping their arbitrary and capricious review of benefits determinations of discretionary decisionmakers." Id.

Pinto looked at both the result and the process by which it was achieved, but did not leave the court free to simply substitute its judgment for that of the administrator. The admonition directed to the district courts applies as well to us as we review awards of summary judgment.

Against that background of what may be termed limited deference, we have carefully reviewed the evidence in this case consisting of notes of Dr. Nelson, the attending psychiatrist, and the reports of the psychiatrists and psychologists who examined the plaintiff beginning in 1999. During the two-year period from 1999 to 2001, plaintiff received care by Dr. Nelson on an outpatient basis primarily in office visits in intervals of three to four weeks, accompanied by adjustments of medications as needed.

Some months before the two-year coverage was due to expire, plaintiff expressed his concern to Dr. Nelson about that fact. However, other than the three-week hospitalization at the end of the period, there was no major change in the regimen.

The issue the administrator had to resolve here was whether the treatment rendered after the plaintiff's discharge from the hospital was in "lieu of hospitalization."

The administrator relied substantially on the opinion of Dr. Mirkin, a consulting psychiatrist, who pointed out concerns that would have indicated the necessity of hospitalization or a similar level of care. These factors, however, were lacking and in Dr. Mirkin's view Dr. Nelson's treatment program after the plaintiff's release from the hospital in July 2001 did not meet the criteria of in "lieu of hospitalization."

Plaintiff contends that care provided by his wife should qualify as "extended treatment." She has a degree in psychology and an MBA in health administration, and she was employed as an administrator at a number of health programs. She rendered services for plaintiff, such as insuring that he took his medication and maintained his dietary compliance, monitoring his exercise program, and using techniques to calm him when he became agitated.

In urging reconsideration of his claims for extended care, plaintiff characterized his wife's services as "extended treatment" and implies that the administrator had not been aware of it before denying the additional benefits. However, in our review of the records, we found that, as early as September 2000, Dr. Ivins, a psychologist, in his report of an examination described the assistance provided by the plaintiff's wife. Reference to the spouse's care also appears in the report of Dr. Paul Sachs, a psychologist, in his report of examinations in January 2001.

The wife's commendable and compassionate caring for plaintiff was not something unknown to the administrator before it denied reconsideration. Nor was it of

5

the nature that required medical training. The wife's services were those that are often provided by committed spouses.

Similarly, the plaintiff's attempts to differentiate between organic and psychological conditions are of no avail when the Plan included both.

The term "extended treatment" is not one that can be described in sharp and precise terms, but must be understood in light of the Plan's limitation of coverage to two years and the plaintiff's chronic illness. The Plan does not call for payments for the duration of disability, but for two years.

The correctness of the administrator's decision may be said to be a close one, but not beyond the discretion conferred by the Plan. The procedures employed here were reasonable and adequately documented. We conclude that the District Court, after considering the relevant criteria, properly deferred to the discretion entrusted to the administrator.

Accordingly, the judgment of the District Court will be affirmed.